**Ed PRAZMA and Mary Prazma,**
**Appellants (Plaintiffs),**

v.

**Raymond KAEHNE and Helen Kaehne,**
**Appellees (Defendants).**

No. 87-228.

Supreme Court of Wyoming.

Feb. 9, 1989.

---

John M. Daly of Daly, Anderson & Taylor, P.C., Gillette, for appellants (plaintiffs).

John F. Araas of Redle, Yonkee & Arney, Sheridan, for appellees (defendants).

Before CARDINE, C.J., THOMAS and URBIGKIT, JJ., and GUTHRIE and BROWN, JJ., Retired.

GUTHRIE, Retired Justice.

This is an appeal from the grant of a motion for directed verdict at the close of plaintiffs' case (appellants here). We affirm the trial court's decision.

This action involves a suit filed by appellants in which they sought an injunction against appellees to confirm their right to use a road and to restrain appellees from blocking or interfering with the use of the road by appellants and their visitors. Additionally, appellants asserted a claim for damages for alleged tortious interference with a reasonable contractual expectancy for the sale of their ranch.

The road which is the focus of this appeal is located in Crook County. It was originally established by agreement between relatives of the parties to this appeal. In 1928, John Prazma, father of appellant Ed Prazma, and grandfather of Helen Kaehne, purchased the ranch now owned by the appellants from James Nemic. John Prazma encountered access problems with James Nemic, Jr., whose ranch lay to the south. Consequently, in 1930 Prazma resorted to statutory procedures which permitted the county commissioners to establish a road. This road, which crossed land owned by James Nemic, led in a southerly direction from Prazma's ranch to what was then described as the Custer Battlefield Highway (Highway 16), at a point approximately five miles west of Moorcroft. The existence of Prazma's road is admitted by the pleadings and the evidence, although the southern part has not been used since 1932.

In 1932, J.B. Prazma, who was Helen Kaehne's father, bought the James Nemic, Jr., land, which lay to the south of his father's ranch. Because part of the road as established by the county commissioner proceedings was blocked by snow at times, and because it went through a hay meadow, the Prazmas established a "new" road which ran up to a quarter of a mile west of the original road. This road, which was called "John's Road," was regularly used by all the parties without objection or dispute. This road extended from John's ranch to the highway. The road on to

J.B.'s ranch remained in its original course. Although there was some bickering and disputes with other users of the road, these problems were not based on the use of the road, but were directed at the manner of use, i.e., excess speed or leaving the right-of-way.

It was not until August 1986 that appellees closed the road between the highway and their place to all users. A barricade was erected announcing the closure of this road with an arrow pointing east containing the words "Prazma Road," this being an apparent reference to the road established by the earlier proceedings before the County Commissioners.

Thus the battle was joined and this litigation ensued.

There was no written agreement or understanding when the use of the former road was abandoned and "John's Road" established, nor was there any testimony of any verbal understanding by the parties when this change was made. The closure of the road was prompted, among other things, by the claimed refusal of appellants to pay a proper share for the maintenance of the section of the road which was used by both parties for access to their ranches. No question is raised in connection with the other portion of the road.

Appellants outline the issues in the appeal as follows:

1. Is there an easement by grant?
2. Is there an easement by estoppel?
3. Is there a prescriptive easement?
4. Is there interference with contractual advantage?

Appellees assert that it is improper for the court to consider whether there is an easement by grant or estoppel because these issues were never asserted or presented in the lower court and that it would not be proper to now consider them for the first time in this appeal.

### EASEMENT BY GRANT

■ We need not consider on appeal questions not properly raised in the trial court. *Ricci v. New Hampshire Ins. Co.*, 721 P.2d 1081, 1088 (Wyo.1986). Insofar as the claim of an easement by grant is con-

cerned, there is no citation of authority of any character in appellants' brief. They argue that the exact location of the original road was left to the determination of the landowners. However, there is no support for that in the record, nor are we cognizant of any proceedings for the establishment of such a road by county commissioners which would allow such procedure.

This argument does not reach the dignity of proper citation of authority or cogent argument. It has been settled that we will not consider such issues in absence of citation or cogent argument. *Zanetti v. Zanetti*, 689 P.2d 1116 (Wyo.1984).

### EASEMENT BY ESTOPPEL

■ Nor can the claim that an easement was established by estoppel be properly considered. We find no mention of estoppel in the complaint, nor were any facts pleaded upon which an estoppel theory could be based. The appellants' pretrial submission sets out only a claim for a prescriptive easement and does not mention estoppel. In addition to the general rule that we need not consider questions not properly raised in the trial court, estoppel is an affirmative defense which must have been pleaded. In response to the motion for directed verdict, we find no mention of estoppel nor any claim thereof. The case of *Fuss v. Franks*, 610 P.2d 17, 21 (Wyo. 1980) is decisive in this respect. The court there said:

> We held in *Ranger Insurance Company v. Cates*, Wyo., 501 P.2d 1255, 1259 (1972), that estoppel must be pleaded (Rule 8(c), W.R.C.P.) with precision and certainty, provided, however, that the defense may be relied upon even though not pleaded in so many words where the allegations amount to an estoppel.
>
> There was no pleading of estoppel, nor were there allegations amounting to estoppel in this case. We will, therefore, not consider the point.

See also, *Waters v. Brand*, 497 P.2d 875, 877 (Wyo.1972); *Badley v. Birchby*, 487 P.2d 798, 799 (Wyo.1971).

### PRESCRIPTIVE USE

The question of whether appellants have an easement giving them the right to use

the portion of the road known as John's Road, that portion of the road which was moved from its established location to a course approximately a quarter of a mile west, must rest in our determination whether an easement by prescriptive use can be established.

Because there was the grant of a directed verdict at the close of plaintiffs' case, we must examine the record and make our disposal under the rule applying to such situations as set forth in *Erickson v. Magill,* 713 P.2d 1182, 1186 (Wyo.1986). Such motions are seldom granted. The trial court cannot consider the credibility of the witnesses or the weight of evidence. Motions for directed verdict should only be granted when no other conclusion could be reached. These rules have been so often discussed no good purpose would be served by their reiteration in different words.

■ To establish and acquire a prescriptive easement requires proof of four necessary elements: (1) adverse use; (2) claim of right under color of title or claim of right; (3) to be of such use as to put the owner of the subservient estate on notice of the claim; and (4) that the adverse use must be continuous and uninterrupted for a period of ten years. *Koontz v. Town of Superior,* 746 P.2d 1264, 1268 (Wyo.1987); *Gregory v. Sanders,* 635 P.2d 795 (Wyo.1981).

The facts and evidence show, without dispute, that the road, in its inception, was in no manner adverse. The way was established by mutual agreement and concurrence of the parties when it was moved from its original location and became the road both of them used for access to their respective ranches. This was clearly a mutual arrangement for a permissive use. Appellants make no claim that it was otherwise.

■ Appellants here have a heavy oar. Claims of prescriptive easements are not favored. *Gregory,* 635 P.2d at 800–01; *Gray v. Fitzhugh,* 576 P.2d 88 (Wyo.1978). Additionally, one claiming such an easement has the burden of proof, *Caribou Four Corners, Inc. v. Chapple–Hawkes, Inc.,* 643 P.2d 468 (Wyo.1982), and such use is presumed permissive, absent evidence of hostile entry. Under these facts, the use

of this road must be regarded as permissive. Appellants base their claim of adversity on the behavior of Kaehnes in confrontations with invitees or others seeking to use the road to get to the Prazma ranch. There is no evidence of Kaehnes ever forbidding the appellants to use the road; they permitted its use until the sign and barricade were placed upon the road sometime late in August or September, 1986. This is less than the requisite period of limitations.

There is no evidence of any facts or actions of appellants which would put the owners of the subservient estate on notice that appellants' use was anything but permissive as before.

It was necessary for appellants to show just how their actions would give notice to appellees of the adverse use and adverse nature of their claim. *Shumway v. Tom Sanford, Inc.,* 637 P.2d 666, 670 (Wyo. 1981). This rule should have particular application when the original use is clearly permissive. Because there is no proof of an adverse use, appellants' claim of a prescriptive easement must fall.

## CONTRACTUAL INTERFERENCE

■ This claim is based upon an asserted intentional interference with appellants' contractual expectancies looking towards the sale of the Ed Prazma ranch to Harold Birch or Charles Birdie. Birch and his wife were interested in leasing land with an option to purchase. He later learned that the owner was interested only in the sale of the lands and not a lease. He testified that he made no offer because the price was too high and he did not like the neighbors, being an apparent reference to the confrontations between Lester Kaehne, not a party to the suit, as well as the appellees.

In light of our determination that appellants have no prescriptive easement, appellees' statements to real estate sales persons or prospective purchasers that Prazmas had no such easement is not actionable. Birch not only did not make an offer, he deemed the price too high. His desire was to lease a ranch with an option to purchase. Ed Prazma did not want that. This, on its face, negates any intention to make an offer.

It is also to be observed that, whether solicited or volunteered, truthful statements are not actionable for tortious interference with a contract or prospective contractual relationship. *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 280 (Wyo.1985).

■ Insofar as the claimed prospective contractual relationship with Charles A. Birdie is concerned, there is a complete lack of evidence which would sustain any claim. Birdie never saw, nor was he able to go upon, the Ed Prazma place. This was in no manner due to actions of appellees. When Pettigrew, the realtor, drove Birdie out to the ranch of appellants, they encountered a locked gate at the entrance to the Prazma place. This gate was locked by the Prazmas, not the appellees. When Birdie was asked if he had intended to make an offer on the Prazma place, he responded in an equivocal manner:

Had I been able to see the property, if it was the property that we wanted, yes. Yes, sir; I would have made an offer.

This clearly demonstrates that never at any time had Birdie formed any intent to make an offer.

This factual situation causes this writer to wonder just what could be the possible measure of damages. A possible offer, in an unmentioned amount, contingent upon an examination of the premises, raises the question of just what would be a proper measure of damages. It would be speculative in its most favorable light. Complete speculation by a finder of fact has been often condemned, *Wheeler v. Woods*, 723 P.2d 1224, 1227 (Wyo.1986), and damages are a necessary element in the proof of a claim for interference with contractual relationships.

In *Wheeler*, 723 P.2d at 1229, citing W. Prosser & W. Keaton, The Law of Torts § 130 at 1006 (5th ed. 1984) with approval, the general rule recognized by the court in cases of this character is that there must be some real possibility of benefit to sustain recovery; recovery has been denied when there is " 'no sufficient degree of certainty that the plaintiff ever would have received the anticipated benefits.' " This rationale is repeated by *Martin v. Wing*, 667 P.2d 1159, 1163 (Wyo.1983) which held that there must be a "reasonable probability of resulting in a contract."

A claim based upon such a possibility of Birdie making any offer which might be accepted is completely speculative. The evidence does not present a reasonable possibility of a contract being made. He made no further attempt to see the property after this incident. Appellants do not point out just what prospective contractual relationship Kaehne interfered with insofar as Birdie was concerned. Birdie's possible offer was based upon seeing the place. The locked gate prevented that. No suggestion is made that Kaehne locked the gate. Cited authority appears unnecessary to demonstrate the speculative nature of such a claimed prospective contractual relationship.

There was no evidence that there was a reasonable expectancy of a contract with either the Birches or Birdies; because there is no evidence on which a proper award of damages might be based, the action of the trial court on this claim was proper.

AFFIRMED.