Earl G. WEISS and Mildred L. Weiss, husband and wife; Chad Porter and Betty Porter, husband and wife; and James L. Fisher and Kathryn B. Fisher, husband and wife, Appellants (Defendants),

v.

Alfred L. PEDERSEN and Marva M. Pedersen, husband and wife, Appellees (Plaintiffs).

No. 96–56.

Supreme Court of Wyoming.

Feb. 28, 1997.

Maureen T. Donohoue, Lander, for Appellants.

William L. Miller of Miller & Fasse, P.C., Riverton, for Appellees.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellants Earl and Mildred Weiss, Chad and Betty Porter, and James and Kathryn Fisher appeal from the order which granted an injunction and a declaratory judgment against them and in favor of Appellees Alfred and Marva Pedersen.

We affirm.

## ISSUES

The appellants present the following issues on appeal:

I.   Did the trial court err in granting a permanent injunction to appellees as against appellants absent a showing and finding by the trial court of irreparable harm and the insufficiency of a legal remedy[?]

II.[ ]  If the trial court did not err in granting a permanent injunction to appellees as against appellants[,] was the trial court[']s injunctive relief overbroad in that it prevents appellants from using the easement ex[c]e[p]t by permission of appellees and restricting appellees['] access easement "in any way with gates or fences"[?]

III.   Did the trial court err as a matter of law in finding that appellants should be denied a prescriptive easement because their use was "presumed permissive"[?]

## FACTS

The dispute in this case is over the use of a roadway which branches off a public road and traverses the parties' properties.  The land which is involved in this dispute was owned at one time by the parents of James Fisher and Mildred Weiss, who are brother and sister.  The parents conveyed the property to James Fisher in 1970.

In October 1975, James and Kathryn Fisher, together with James's parents, conveyed

a parcel of land (Tract 1) to William and Marianne Trees. The Fishers also granted a thirty-foot easement to the Treeses across property which they continued to own to provide the Treeses with access to a public road. The Fishers did not, however, reserve an easement for themselves across Tract 1.

In December 1975, James and Kathryn Fisher and James's parents conveyed another parcel of land (Tract 2) to Duane and Barbara Ayers. The Treeses joined in the transaction to convey a thirty-foot easement to the Ayerses along the eastern boundary of Tract 1. The Fishers were not, however, granted a similar easement across Tract 1. The easement across the Fishers' property and the easement across Tract 1 comprise the roadway which is at issue in this case.

In May 1985, James and Kathryn Fisher conveyed approximately sixteen acres of land which was located generally east of Tracts 1 and 2 to Mildred and Earl Weiss. The Weisses allowed Betty and Chad Porter, their daughter and son-in-law, to locate a modular home on their property east of Tract 1. The Fishers and the Weisses also grew hay on this property.

A wire fence located on the Weisses' property ran just east of the eastern boundary of Tract 1. A wire gate providing access to the hayfield was located in the fence near the northeast corner of Tract 1. Over the years, the Fishers, and later the Weisses, occasionally traveled on the roadway on Tract 1 to get to the gate to their hayfield. The Weisses replaced the wire gate with a metal gate in 1988. In that same year, the Treeses conveyed Tract 1 to Merrill Lynch Realty Operating Partnership, and Merrill Lynch conveyed the property to the Pedersens.

A cattleguard was located on the roadway in the southeast corner of Tract 1. When the appellants drove equipment over the cattleguard on their way to their hayfield, they damaged the posts at the ends of the cattleguard. The appellants erected a gate in the southeast corner immediately adjacent to the cattleguard and occasionally swung the gate across the roadway, effectively blocking the Pedersens' access easement. Sometime around 1991, the Porters and/or the Weisses opened a large section of the fence between their property and Tract 1. For access to their home, the Porters created a circular driveway in front of their house which made use of the roadway across Tract 1.

On January 16, 1995, the Pedersens filed a complaint, seeking to have a declaratory judgment and an injunction entered against the appellants. The Pedersens sought to have the trial court declare that they were the sole and exclusive owners of Tract 1 and that the appellants did not have any interests or rights in their property. Additionally, they petitioned the trial court for an injunction against the appellants to prohibit them

from crossing Tract 1. The Pedersens also requested injunctive relief to prohibit the appellants from interfering with their access easement across the Fishers' property. The appellants filed a counterclaim, requesting that the trial court order the Pedersens to properly maintain the cattleguard or, in the alternative, to secure the gate across the roadway to prevent their livestock from entering Tract 1 and asserting that they had acquired a prescriptive easement on the roadway across Tract 1.

The trial court held a bench trial and entered a judgment generally in favor of the Pedersens and against the appellants. The trial court concluded in pertinent part:

1. [The Pedersens] are the sole owners of Tract 1 and in particular the thirty-foot strip of land located along the east boundary of Tract 1 reflected as a thirty-foot right-of-way easement on [the map]. . . . Said thirty-foot strip of land is subject to a right-of-way easement in Duane S. Ayers and Barbara E. Ayers but none of the [appellants].

2. [The Pedersens] have a thirty-foot wide access easement across the east boundary of property owned by Defendants James L. Fisher and Kathryn B. Fisher which provide[s the Pedersens] access to Tract 1 . . .

"[Legal description of the easement.]"

3. The [appellants] have no right to interfere with the use of said easement.

4. [The Pedersens] have the right to place a cattle guard as well as gates on their property line adjacent to their easement and [the appellants] have no right to require a gate in lieu of a cattle guard.

5. The [appellants] and each of them, their heirs and assigns are permanently enjoined from restricting [the Pedersens'] access easement in any way with gates or fences.

6. The [appellants] and each of them and their heirs and assigns are permanently enjoined from entering [the Pedersens'] property, Tract 1, without the permission of [the Pedersens].

7. [The Pedersens] are entitled to erect a fence along the east boundary of Tract 1 to define the boundary of their property and the [appellants] are permanently enjoined from cutting the fence, moving the fence or placing any gates or openings in the fence.

The appellants appealed to this Court.

## DISCUSSION

### A. Standard of Review

■ The trial proceedings in this case were not recorded or transcribed, and the appellants did not present a settlement of the record under W.R.A.P. 3.03. We must, therefore, accept "the trial court's findings as being the only basis for deciding the issues which pertain to the evidence." *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.*, 896 P.2d 769, 771 (Wyo.1995). "In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings." 896 P.2d at 771–72. *See also Osborn v. Pine Mountain Ranch*, 766 P.2d 1165, 1167 (Wyo.1989).

### B. The Injunction

The appellants contend that the trial court erred by granting a permanent injunction against them absent showings by the Pedersens and findings by the trial court of irreparable harm and insufficiency of a legal remedy. They also argue that the trial court erred by prospectively enjoining them from cutting, moving, or placing gates in any fence which the Pedersens may construct on their property in the future.

■ Although actions for injunctive relief are authorized by statute, WYO. STAT. §§ 1–28–101 to –111 (1988 & Supp.1996), they are, by nature, requests for equitable relief which are not granted as a matter of right but are within the lower court's equitable discretion. *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 332 (Wyo.1986). Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. *Id.; Gregory v. Sanders*, 635 P.2d 795, 801 (Wyo.1981). Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. *Rialto Theatre, Inc.*, 714 P.2d at 332. An

injury is irreparable " 'where it is of a "peculiar nature, so that compensation in money cannot atone for it." *Gause v. Perkins,* 56 N.C. 177 (1857).' *Frink v. North Carolina Board of Transportation,* 27 N.C.App. 207, 218 S.E.2d 713, 714 (1975)." *Gregory,* 635 P.2d at 801.

▮ "[T]he traditional office of injunction has been to protect property rights." 42 AM.JUR.2D *Injunctions* § 69 at 814 (1969). "Jurisdiction to prevent threatened disturbance of the peaceful use and enjoyment of real property is inherent in a court of equity, and injunction is a proper and ordinary remedy for the protection of owners in the enjoyment of their rights in real estate . . . ." (Footnotes omitted.) 42 Am. Jur.2d Injunctions, § 71, p. 815 (1969).

*Gregory,* 635 P.2d at 801. In the *Gregory* case, this Court determined that the district court had properly enjoined the appellants from using private roadways in a subdivision. 635 P.2d at 801. We noted that monetary damages were not sufficient to compensate the injured parties for their loss of privacy. *Id.* With regard to easements in particular, injunctive relief is appropriate to prohibit the servient estate owner from interfering with the dominant estate owner's use of his easement. *See Bard Ranch Company v. Weber,* 557 P.2d 722 (Wyo.1976); *Weber v. Johnston Fuel Liners, Inc.,* 519 P.2d 972 (Wyo.1974). An injured party is not required to wait until the threatened injury has been consummated before he can obtain injunctive relief. *Rialto Theatre, Inc.,* 714 P.2d at 333. " 'Injunctive relief is designed not to deal with past violations, but to avoid future wrongs.' " *Id.* (quoting *Reno Livestock Corporation v. Sun Oil Company (Delaware),* 638 P.2d 147, 153 (Wyo.1981)).

▮ In this case, the trial court specifically found:

29. [The Pedersens] are entitled to a judgment declaring them to be the sole owners of Tract 1 in its entirety and the [appellants] have no right to any roadway across Tract 1 nor any right to enter on Tract 1 for any reason without the permission of the [Pedersens]. [The Pedersens] have no adequate remedy at law and therefore an injunction should be entered en-

joining the [appellants] from entering [the Pedersens'] property and/or interfering with [the Pedersens'] use of their easement across the property owned by [Appellants] Fisher.

The trial court also found that the appellants had used the roadway across Tract 1 to access their hayfield and the Porters' home; that they had damaged the posts at the ends of the cattleguard with their hay harvesting equipment; and that they had also, on occasion, swung the gate across the Pedersens' access easement.

▮ The trial court's findings reveal that the Pedersens' peaceful use and enjoyment of Tract 1 and their easement across the Fishers' property were compromised. The Pedersens suffered irreparable harm which could not be compensated for by monetary damages. Further, the trial court did not err by making its ruling prospective to forbid the appellants from interfering with any fence which the Pedersens may build in the future. Injunctive relief is specifically intended to prevent future wrongs. When the trial court prohibited the appellants from entering the Pedersens' property without the Pedersens' permission, it necessarily forbade them from interfering with any fence that the Pedersens may build on their property. The ruling which prohibited the appellants from cutting or moving the Pedersens' fence was simply a part of its general ruling which banned the appellants from entering the Pedersens' property. Since injunctive relief is particularly suited to protecting property interests, the trial court did not err by granting the injunction in favor of the Pedersens. The record does not contain any evidence which refutes the trial court's findings that the Pedersens did not have an adequate remedy at law, and, in the absence of a transcript, we must accept the trial court's rulings.

▮ The appellants also contend that the injunction was overbroad. The trial court's order "enjoined [the appellants] from entering [the Pedersens'] property, Tract 1, without the permission of [the Pedersens]." The appellants insist that, by preventing them from using the roadway across Tract 1 except with the Pedersens' permission, the trial

court ignored the Ayerses' easement across Tract 1 which "may be used by family, friends and visitors to the Ayers home."

In *Gregory,* this Court held that an injunction which prohibited "the appellants from using the private roadways even if invited by the homeowners in the subdivisions who have the right to allow guests, employees or other invitees on the roads" was overly broad. 635 P.2d at 802. We stated that the order should have banned only the appellants' unauthorized use of the roadways. *Id.*

The trial court's order recognized the Ayerses' easement over Tract 1 and did not expressly prohibit the appellants from using the road to visit the Ayerses with their permission. The order does not show that the trial court considered the possibility of the appellants using the roadway to visit the Ayerses. Instead, the trial court was concerned with the appellants entering the Pedersens' property without authorization. When we read the trial court's injunctive order together with its findings, we conclude that the injunction did not prohibit the appellants from using the roadway to visit the Ayerses with their permission. The trial court's order, therefore, was not overly broad.

■ The appellants further contend that the injunction was overbroad because it prohibited them from restricting the Pedersens' access easement "in any way with gates or fences." They contend that the restriction denied them the right to control and manage livestock on their own property.

A cattleguard and a gate were located near the southeast corner of Tract 1 to keep the appellants' livestock from entering Tract 1. The trial court found that the appellants had, on occasion, swung the gate located adjacent to the cattleguard across the easement, that the appellants did not have a right to restrict the Pedersens' easement by swinging the gate across the roadway, and that the appellants did not have a right to require the Pedersens to employ a gate in lieu of a cattleguard.

The owner of an easement cannot materially enlarge the burden on the servient estate or impose a new burden on the servient estate. When a right-of-way easement is granted, a right of passage is given. The owner of the servient estate, of course, retains all rights of ownership which are consistent with the use of the easement. These competing rights must be balanced to promote the enjoyment of both the easement and the servient estate. *Van Raden v. Harper,* 891 P.2d 78, 79 (Wyo. 1995) (citations omitted). In *Van Raden,* this Court determined that the owner of an easement could place cattleguards instead of gates on the easement in order to improve the convenience of using the easement. *Id.* We held that the use of cattleguards in lieu of gates did not materially increase the burden on the servient estate. *Id.*

On the record before us, we cannot say that the trial court erred. The trial court's findings support its ruling which enjoined the appellants from restricting the access easement in any way with fences or gates. The Pedersens' use of a cattleguard in place of a gate did not materially increase the burden on the servient estate. Further, the trial court properly enjoined the appellants from restricting the easement in the future. Since the appellants had swung the gate across the easement in the past, a threat existed that they might similarly restrict the easement in the future.

## C. Prescriptive Easement

■ In their counterclaim, the appellants asserted that they had acquired a prescriptive easement on the roadway across Tract 1. The trial court denied their claim for a prescriptive easement because it found that the appellants' use of the roadway was presumed to be permissive and that the appellants had not presented any evidence which showed that their actions gave notice to the Pedersens of "the adverse use and adverse nature of their claim for the statutory [period] of ten years." The appellants argue that the trial court erred as a matter of law when it found that their use of the roadway on Tract 1 was permissive.

■ This Court does not favor claims for prescriptive easements. *Prazma v. Kaehne,* 768 P.2d 586, 589 (Wyo.1989). A

party who is claiming an easement by prescription has the burden of proof. *Id.*

To establish and acquire a prescriptive easement requires proof of four necessary elements: (1) adverse use; (2) claim of right under color of title or claim of right; (3) to be of such use as to put the owner of the subservient estate on notice of the claim; and (4) that the adverse use must be continuous and uninterrupted for a period of ten years.

*Id.* (citations omitted). *See also* WYO. STAT. § 1–3–103 (1988).[1] Absent any evidence of hostile entry, a party's use of an easement is presumed to be permissive. *Prazma,* 768 P.2d at 589. The party who is claiming an easement by prescription is required to show how his actions gave notice to the opposing party that his use was adverse. *Id.*

The appellants argue that, under *Shumway v. Tom Sanford, Inc.,* 637 P.2d 666 (Wyo.1981), they are entitled to a presumption that their use of the roadway was adverse. The appellants misread the *Shumway* case. In that case, this Court recognized that our prior decisions were inconsistent with regard to whether, in establishing prescriptive easements, a presumption existed that the use was hostile or a presumption existed that the use was permissive. 637 P.2d at 669. We resolved that inconsistency by holding:

[T]he best rule for the State of Wyoming is one which requires that a landowner claiming an easement by prescription in an unimproved road crossing the lands of his neighbor must assume the burden of establishing that his intention to make a hostile use of the road adverse to the interests of his neighbor was brought home to the neighbor in a clear and unequivocal way. His subjective intent will not be considered material, and while it is likely true that a manifestation of his hostile and adverse intent will result in revocation of permission to use the road across the neighbor's land, this is the best posture for the law to assume in the State of Wyoming. The claimant cannot rely upon

a presumption arising out of the open, notorious, continuous and uninterrupted use for the prescriptive period, but in the absence of more that use will be presumed to have been with permission. To rebut this presumption the claimant must introduce evidence of the facts which demonstrate the manner in which the hostile and adverse nature of his use was brought home to the owner of the adjacent land.

637 P.2d at 670. We also noted that "neighborliness and accommodation to the needs of a neighbor are landmarks of our western lifestyle." *Id.* We have reaffirmed the *Shumway* holding in subsequent cases. *See, e.g., Prazma,* 768 P.2d at 589; *Caribou Four Corners, Inc. v. Chapple–Hawkes, Inc.,* 643 P.2d 468, 471 (Wyo.1982).

The appellants suggest that, since "[t]he act of building a road gives rise to a strong inference of an adverse use," the Pedersens had notice that the appellants' use of the roadway on Tract 1 was adverse. The trial court did not find that it was the appellants who had built the road across Tract 1, and the appellants do not direct us to any evidence which establishes that they built a road across Tract 1 after they conveyed the land to the Treeses. The appellants' argument, therefore, does not have merit.

The appellants also argue that their continued use of the roadway over the years was sufficient to manifest their adverse use. We disagree. Under the *Shumway* ruling, so long as a showing is not made that the use of an easement was hostile or adverse, the use is presumed to be permissive even though it was open, notorious, continuous, and uninterrupted for the prescriptive period. 637 P.2d at 670. The appellants' use of the roadway to gain access to their hayfields and to the Porters' home does not rebut the presumption that they had permission from the Treeses and the Pedersens to traverse the roadway on Tract 1. The evidence which was presented to this Court indicates that, until the case at bar commenced, the Treeses and the Pedersens were simply acting in a

---

1. Section 1–3–103 states:

An action for the recovery of the title or possession of lands, tenements or heredita-

ments can only be brought within ten (10) years after the cause of such action accrues.

neighborly fashion by allowing the appellants to use the roadway. The appellants, therefore, failed to overcome the presumption that their use of the roadway was permissive, and the trial court properly denied their claim for a prescriptive easement.

## CONCLUSION

The trial court did not err when it granted injunctive relief to the Pedersens to prohibit the appellants from entering Tract 1 without authorization and to prevent the appellants from interfering with the Pedersens' use of their easement across the Fishers' property. Additionally, the trial court properly held that the appellants did not acquire a prescriptive easement across Tract 1.

Affirmed.