In the Matter of the Worker's Compensation Claim of: Charles D. LEAVITT, Appellant (Employee–Claimant),

v.

STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector–Defendant).

No. 98–118.

Supreme Court of Wyoming.

May 25, 1999.

Robert E. Schroth, Jackson, Wyoming, for Appellant

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; Bernard P. Haggerty, Assistant Attorney General, for Appellee

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

GOLDEN, Justice.

Charles Leavitt appeals from the district court's order affirming a hearing examiner's denial of worker's compensation benefits for Leavitt's neck injury. After hearing testimony from several doctors and Leavitt in a contested case hearing, the hearing examiner determined that, while Leavitt's shoulder injury was incurred in the performance of his employment, his neck injury was not. We uphold factual determinations of administrative agencies, including the determination that an injury occurred outside the course of employment, if they are supported by substantial evidence. The Division's doctor and Leavitt's own physician, once apprised of Leavitt's post-operative activities, opined that Leavitt's neck injury was not work-related, but was likely sustained when he fell while pushing his wife's car out of the snow. Substantial evidence supports the hearing examiner's decision; therefore, we affirm.

* retired November 2, 1998

## ISSUES

Appellant Leavitt presents this statement of the issue:

> Whether the record contains substantial evidence to support the hearing examiner's determination that Claimant's injury did not arise out of and in the course of his employment.

The Appellee Division responds:

> The Employee injured his shoulder lifting buckets of rock at work. Six months later, after two intervening accidents, his doctors discovered a neck injury.
>
> A. Was the denial of benefits for the Employee's neck injury supported by substantial evidence?

## FACTS

Leavitt was employed as a carpenter's helper in November of 1995. On November 6, 1995, while carrying buckets of rock weighing between one hundred and one hundred and fifty pounds, Leavitt was injured. On November 17, 1995, Leavitt filed a report of occupational injury stating that he suffered an injury to his right shoulder while carrying fireplace rock in five gallon buckets. Leavitt sought medical treatment and was eventually referred to Dr. James Champa, who ordered testing for a possible rotator cuff tear. When that testing came up negative, Dr. Champa referred Leavitt to Dr. Franklin Rivers, who diagnosed a problem with Leavitt's AC joint. Leavitt underwent an operation on his shoulder for this condition on January 22, 1996.

Immediately after surgery, Leavitt continued to experience pain in his shoulder. On February 8, 1996, Leavitt went to the hospital emergency room to seek care from Dr. Martha S. Hageman. Leavitt reported that he re-injured his shoulder and was experiencing pain in the back of his neck. According to Dr. Hageman, Leavitt told her he was pushing his wife's car out of the snow and felt a pain go through his shoulder and neck as they were being strained.

After undergoing physical therapy, Leavitt returned to the care of Dr. Champa in April of 1996. Dr. Champa determined Leavitt's

condition had not improved and suspected an injury to Leavitt's neck. An MRI of Leavitt's neck indicated a herniated disk at the C5–6 level. Eventually, Dr. Kenneth Lambert performed a subacromial decompression of Leavitt's right shoulder on July 30, 1996, and performed a cervical fusion on Leavitt's neck on September 10, 1996.

The Division denied benefits for Leavitt's neck and arm problems on November 22, 1996, pursuant to a medical file review performed by Dr. Robert G. Weiner. Leavitt requested a hearing on the denial. After a contested case hearing, the hearing examiner approved benefits for the shoulder injury, but denied benefits for the neck injury. Leavitt filed a petition for review of the administrative action with the District Court of Teton County, Wyoming, Ninth Judicial District. The district court affirmed the hearing examiner's decision, and Leavitt timely filed a notice of appeal.

## STANDARD OF REVIEW

■ This case comes to us on appeal from the district court's decision to affirm the hearing examiner's denial of benefits. We review "agency action as if the appeal came directly to the supreme court from the agency," according no deference to the district court's decision. *RM v. Dept. Of Family Services,* 953 P.2d 477, 481 (Wyo.1998).

■ The sole issue Leavitt presents for our review is whether substantial evidence supports the hearing examiner's denial of benefits for his neck injury. Judicial review of agency action is governed by Wyo. Stat. Ann. § 16–3–114(c) (Michie 1997):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

\* \* \*

(iii) Hold unlawful and set aside agency action, findings and conclusions found to be:

\* \* \*

(E) Unsupported by substantial evidence. . . .

*See also* W.R.A.P. 12.09(a). This Court reviews a hearing examiner's finding that an injury occurred outside the course of employment using the substantial evidence test:

Whether or not an employee's injury occurred in the course of his employment is a question of fact. We review an administrative agency's findings of fact by applying the substantial evidence standard. Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions.

*DeWall v. State of Wyoming, ex rel. Workers' Safety & Compensation Div.,* 960 P.2d 502, 503 (Wyo.1998) (citations omitted).

## DISCUSSION

In his brief Leavitt argues that his testimony, the testimony of his treating physicians, Drs. Champa and Lambert, and his medical records all indicate that he sustained his neck injury while carrying rock at work. Just as he apparently did before the district court, Leavitt "basically reargues factual issues determined adversely to him by the hearing examiner at the contested case phase . . . [and] seeks a *de novo* review of the hearing."

■ Dr. Lambert provided a written deposition for the hearing, and Dr. Champa testified telephonically. Dr. Champa and Dr. Lambert were of the opinion that both Leavitt's neck and shoulder condition arose from his employment. However, during cross-examination, Dr. Champa testified that he was not aware Leavitt was treated by Dr. Hageman after re-injuring his shoulder while pushing a car. During cross-examination, the following exchange occurred:

Q: Okay. And if after pushing out this car out of the snow, that Dr. Hageman records as happening in February of 1996, after you operated on him, if after that time Mr. Leavitt is complaining of paresthesia in his right arm, would that change your opinion in regards to the attribution of his C5–6 condition to a work-related injury?

A: I'd have to answer that yes.

Leavitt contends that this statement actually supports his position. However, Leavitt failed to clarify Dr. Champa's response on redirect, and we will not presume Dr. Champa did not mean what he said. Taken at face value, the transcript reveals that Dr. Champa changed his opinion concerning the cause of Leavitt's neck injury after learning of the injury Leavitt sustained while pushing a car.

Leavitt also contends that Dr. Weiner's report is not supported by the evidence. He points to several statements from Dr. Weiner's report as inconsistent and claims that the report implies that pushing the car worsened a work-related neck injury. Dr. Weiner's report contains the following conclusion:

Therefore, I would apportion 70% of the cervical disk pathology to normal development and physiologic changes and 30% to the aggravation of his work. I feel that the episode of pushing the car was essentially the "final straw on the camel's back" and that if the examinee had not pushed the car on that day, it would only have been a matter of time before his cervical symptoms and radicular symptoms came to fruition. Therefore, while pushing the car was the final event that brought on the examinee's symptoms, it was not specifically the "cause" of the disk bulge. This bulge was due to normal developmental and physiologic changes aggravated by the examinee's strenuous activities.

After careful review, we cannot say that Dr. Weiner's report contains the implications or inconsistencies Leavitt claims.

Finally, Leavitt contends that Dr. Weiner's report should not be considered substantial evidence that Leavitt's condition is not compensable because Dr. Weiner never examined him. Dr. Lambert also found fault with Dr. Weiner's report because "Dr. Weiner has never examined the patient to verify *any* of

his conclusions." Although we understand the concern expressed by Leavitt and Dr. Lambert, we note that Dr. Weiner's testimony was corroborated by Dr. Champa after he learned of Leavitt's visit to Dr. Hageman. The district court's decision bears repeating here:

This Court cannot substitute its judgment for that of the agency and it is not within the prerogative of this Court to perform duties as assigned by law to the Administrative Agency. *McGuire v. McGuire*, 608 P.2d 1278 (Wyo.1980). The hearing examiner is in the best position to judge the demeanor, truth and veracity of witnesses and to decide which evidence is most dependable. *State ex rel. Wyoming Worker's Compensation Division v. Colvin*, 681 P.2d 269, 271 (Wyo.1984). This Court cannot substitute its opinion as to the weight and credibility of evidence for that determination made by the agency. *Gilmore v. Oil and Gas Conservation Commission*, 642 P.2d 773 (Wyo.1982). The ultimate weight to be given to evidence submitted to an agency as a trier of fact is to be determined by the agency in light of the expertise and experience, in this case of the hearing examiner, in such matters. *Telstar Communications, Inc. v. Rule Radiophone Service, Inc.*, 621 P.2d 241 (Wyo.1980).

■■ Our task is not to reweigh the evidence. *Wyo. Steel & Fab., Inc. v. Robles*, 882 P.2d 873, 876 (Wyo.1994). When faced with a substantial evidence question, we merely examine the record to determine if substantial evidence supports the hearing examiner's conclusions. *Id.* Medical evidence in the record and Dr. Weiner's report, which was corroborated by Dr. Champa's testimony on cross-examination, all support the hearing examiner's factual findings. We affirm the hearing examiner's decision to deny benefits for the neck injury.

## CONCLUSION

Although Leavitt argues mightily for what amounts to *de novo* review of the facts in this

case, our standard of review limits us to review of the record for substantial evidence which supports the hearing examiner's decision. Finding an abundance of evidence to support that decision, we affirm.