2002 WY 167

**In the Matter of the Application of Croell Redi Mix, Inc. for a Private Road.**

**ELK HORN RANCH, INC.; Roberta I. Hutchinson Revocable Trust Dated April 1, 1977; and Crago Ranch Trust, Appellants (Petitioners),**

v.

**BOARD OF COUNTY COMMISSIONERS, CROOK COUNTY, Wyoming, Appellee (Respondent),**

and

**Croell Redi Mix, Inc., Appellee (Applicant).**

No. 01–260.

Supreme Court of Wyoming.

Nov. 18, 2002.

1220

Stanley S. Sheehan, Newcastle, Wyoming, Representing Appellants.

No appearance, Representing Appellee Board of County Commissioners.

Mark L. Hughes of Hughes Law Office, Sundance, Wyoming, Representing Appellee Croell Redi Mix, Inc.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   The Board of County Commissioners of Crook County (the board) established a private road over certain landowners' property.  Those landowners dispute the damages awarded to them for the private road and contend the board erred in ordering that cattle guards be installed.  We find the board's decision is supported by substantial evidence and affirm.

## ISSUES

[¶ 2]   We summarize the issues as follows: [1]

I.   Is the private road order issued by the board supported by substantial evidence?

* Chief Justice at time of oral argument

1.   The appellants set out the issues in their brief as follows:

ISSUE ONE

II. Did the board properly determine, as recommended by the viewers and appraisers, that car gates [2] could be installed?

III. Did the board properly approve the survey?

## FACTS

[¶ 3] Pursuant to Wyo. Stat. Ann. § 24-9-101 (LEXIS 1999) (amended 2000), Croell Redi Mix, Inc. (Redi Mix) filed an application with the board requesting the establishment of a private road across property owned by the Roberta I. Hutchinson Revocable Trust (Hutchison), Elk Horn Ranch, Inc. (Elk Horn), and the Crago Ranch Trust (Crago) (collectively the landowners) in order to access and haul gravel from its landlocked property. A road already existed from the public highway to the gravel pit, and Elk Horn had paid Hutchinson $5,000 for an easement over Hutchinson's property giving Elk Horn access to its property. However, Crago had no legal right of access over either Elk Horn's property or Hutchinson's property. The parties stipulated that the private road would be located on the existing road on Hutchinson's property which provided access to Elk Horn's and Crago's properties. Redi Mix agreed to construct a new roadway over Elk Horn's and Crago's properties. The parties also stipulated that the law prior to 2000 would control because Redi Mix sent the initial notices of intent to apply for the private road before the 2000 amendment to § 24-9-101 became effective.

[¶ 4] The board held a hearing on the issue of damages. Representing the interests of Hutchinson, Drew Hutchinson provided his lay opinion the private road would reduce the value of Hutchinson's property by $204,000 on the basis of his personal knowledge of sales in the area, fencing costs would be in excess of $20,000, and a twenty-five percent reduction in the value of the remaining property would result from the haul road which was consistent with the report by the appraiser for Crago's and Elk Horn's properties. He also gave his own opinion as to loss due to inconvenience and the impact the road would have on his family's way of life. Elk Horn and Crago provided an appraiser, Jerry Hulm, who testified the per acre value of the land taken by the actual roadway was $1,000 for Elk Horn's property and $800 for Crago's property. In addition, Mr. Hulm testified the proposed road would diminish the value of the remaining properties and the total damages to Elk Horn's property would be $316,000 and to Crago's property would be $171,000. Mr. Hulm's opinion was supported by his appraisal report which contained a complicated formula that attempted to estimate the impact on the properties based upon proximity to the road and limitations on future development.

[¶ 5] Three viewers and appraisers (the viewers), appointed by the board as required by § 24-9-101, testified the only damage would be the taking of the actual acreage consumed by the roadway. The viewers adopted $1,000 per acre as the value for Hutchinson's property and Elk Horn's property resulting in damages of $4,200 and $3,650 respectively and $800 per acre as the value for Crago's property resulting in damages of $3,240.[3] They also recommended the installation of three cattle guards between

Did the Board of Crook County Commissioners act contrary to law in stating that cattle-guards could be installed?
ISSUE TWO
    Should the finding of facts 7, 10, 11, 15, 20, 21 and 29 be struck since they are not supported by substantial evidence?
ISSUE THREE
    Are the finding of facts and conclusions of law in the order establishing a private road contingent upon approval of survey and payment of damages and costs supported by substantial evidence?
ISSUE FOUR
    Was the survey properly approved by the Board of Crook County Commissioners?

Appellee Croell Redi Mix, Inc. framed the issue in a much more general manner:
    [W]hether the Crook County Commissioner[s'] Order titled Order Establishing a Private Road Contingent Upon Approval of Survey and Payment of Damages and Costs issued on November 14, 2000 is supported by substantial evidence and in accordance with Wyoming law.

2. Car gates are also known in common vernacular as cattle guards.

3. The viewers also recommended damages for timber and shrubbery of $750 to Elk Horn and $1,000 to Crago which are included in the total damage figures but are not at issue in this appeal.

the properties to minimize livestock wandering and preclude the necessity to open and shut gates.[4]

[¶ 6] The board issued an order adopting the viewers' conclusions and establishing a private road contingent upon approval of the survey and Redi Mix's payment of the damages and costs. The landowners filed a petition for administrative review, and the district court affirmed the board's decision. This appeal followed.

## STANDARD OF REVIEW

[¶ 7] In *Hoff v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2002 WY 129, 53 P.3d 107 (Wyo.2002), we reiterated the administrative agency action standard of review clarified in *Newman v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2002 WY 91, 49 P.3d 163 (Wyo.2002).[5]

Judicial review of an agency action is directed by Wyo. Stat. Ann. § 16–3–114.

In appeals where both parties submit evidence at the administrative hearing, *Newman* mandates that appellate review be limited to application of the substantial evidence test. This is true regardless of which party appeals from the agency decision. In addition, this court is required to review the entire record in making its ultimate determination on appeal.

The substantial evidence test to be applied is as follows: "In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence." *Newman,* at ¶ 12.

Even when the factual findings are found to be sufficient under the substantial evidence test, ... this court may be required to apply the arbitrary-and-capricious standard as a "safety net" to catch other agency action which prejudiced a party's substantial right to the administrative proceeding or which might be contrary to the other WAPA review standards. [*Newman* provides a] purely demonstrative listing ... of situations which could warrant the consideration of the arbitrary-and-capricious standard in addition to the substantial evidence test. However, this appeal presents no such unique circumstances.

*Hoff,* 2002 WY 129, ¶¶ 5–8, 53 P.3d 107 (footnotes and some citations omitted). This private road appeal presents no unique circumstances; therefore, we apply only the substantial evidence analysis.

[¶ 8] The landowners also raise questions of law concerning the board's authority to require the cattle guards. We affirm an administrative agency's conclusions of law only if they are in accord with the law. We do not afford deference to the agency's determination, and we will correct any error made by the agency in either interpreting or applying the law. *Yenne–Tully v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2002 WY 90, ¶ 7, 48 P.3d 1057, ¶ 7 (Wyo.2002); *Wesaw v. Quality Maintenance,* 2001 WY 17, ¶ 8, 19 P.3d 500, ¶ 8 (Wyo.2001).

## DISCUSSION

### A. Substantial Evidence

[¶ 9] Before the 2000 amendment, § 24–9–101[6] provided in relevant part

---

**4.** These cattle guards would apparently be in addition to three cattle guards already in place on the properties.

**5.**

> (b) As used in this act:
> (i) "Agency" means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, except the governing body of a city or town,

the state legislature, the University of Wyoming and the judiciary[.]

Wyo. Stat. Ann. § 16–3–101(b)(i) (LexisNexis 2001).

**6.**

> Any person whose land has no outlet to, nor connection with a public road, may apply in writing to the board of county commissioners of his county for a private road leading from his premises to some convenient public road. At least sixty (60) days prior to applying to the

that, when the board finds an applicant has complied with the law and the private road is necessary, it shall appoint three disinterested freeholders and electors of the county as viewers and appraisers and direct them to meet on, view, and locate the proposed private road and assess damages. The statute further required the viewers to submit a plat of the road to the board at the same time they assessed the landowners' damages. Under this version of § 24–9–101,[7] damages were

> assessed in accordance with *Lindt v. Murray*, 895 P.2d 459, 463 (Wyo.1995). That is, the viewers and appraisers must: first, determine the value of the property over which the road crosses before the private road is established; second, determine the value of the property over which the road crosses after the private road is established; and third, subtract the "after" value from the "before" value, which equals the damages due the owners of land over which the road crosses. In applying this formula, the viewers and appraisers are to determine the "before" and "after" value only of those lands over which the private road crosses; not ... the "before" and "after" value of all surrounding lands affected by the proposed road.

*Miller v. Bradley*, 4 P.3d 882, 888–89 (Wyo. 2000); *see also Mayland v. Flitner*, 2001 WY 69, ¶ 35, 28 P.3d 838, ¶ 35 (Wyo.2001).

[¶ 10] The viewers received written instructions explaining how to assess the damages which were consistent with the "before and after test." How and by whom these instructions were drafted and provided to the viewers is not clear. It appears from the record the board may have provided them to the viewers on the day of their on-site property inspection. The landowners did not object to these instructions. They did, however, move to strike the viewers' recommendation report because it failed to

---

> board, the applicant shall give notice in writing to the owner, resident agent or occupant of all lands over which the private road is applied for, of his intent to apply for a private road. If the owner of the land is a nonresident, and there is no resident agent upon which personal service can be had, then the notice may be published once a week for three (3) weeks in a newspaper published in the county. The last publication shall be at least thirty (30) days before the hearing of the application. At the hearing, all parties interested may appear and be heard by the board as to the necessity of the road and all matters pertaining thereto. Upon the hearing of the application, whether the owner or others interested appear or not, if the board finds that the applicant has complied with the law and that the private road is necessary, the board shall appoint three (3) disinterested freeholders and electors of the county, as viewers and appraisers, and shall cause an order to be issued directing them to meet on a day named in the order on the proposed road, and view and locate a private road according to the application therefor, and to assess damages to be sustained thereby. If for any reason the viewers and appraisers are unable to meet at the time set by the board to view the proposed road, they may fix some other date, but shall give notice in writing to the owner, resident agent or occupant of the lands over which the road is proposed to be laid of the time and place where the viewers will meet, at least ten (10) days before viewing the road, at which time and place all persons interested may appear and be heard by the viewers. Before entering upon their duties the viewers shall take and subscribe to an oath that they will faithfully and impartially perform their duties under their appointment as viewers and appraisers. The viewers shall then proceed to locate and mark out a private road in accordance with the application or in such other manner and location they deem appropriate, provided the location of the road shall not be marked out to cross the lands of any person whose lands were not described in the application and who was not given notice of the application. The proposed road shall not exceed thirty (30) feet in width from a certain point on the premises of the applicant to some certain point on the public road, and shall be located so as to do the least possible damage to the lands through which the private road is located. The viewers shall also at the same time assess the damages sustained by the owner over which the road is to be established and make full and true returns, with a plat of the road to the board of county commissioners.

7. During the 2000 legislative session, the legislature added the before and after test:

> (j) In determining any damages to be suffered by the owner or owners of the lands through which the access shall be provided, the viewers and appraisers shall appraise the value of the property before and after the road is in place. Damages also may include reasonable compensation for any improvements on the lands over which any private road is to be granted which were not paid for and will be used by the applicant.

Wyo. Stat. Ann. § 24–9–101(j) (LexisNexis 2001); *see also Mayland v. Flitner*, 2001 WY 69, ¶ 36, 28 P.3d 838, ¶ 36 (Wyo.2001).

provide the reasons for the recommendations. The hearing examiner denied the motion ruling Wyo. Stat. Ann. § 24–9–103 (LEXIS 1999) (amended 2000)[8] required the viewers to file a written recommendation report but did not direct the reasons for the recommendations be included.

[¶ 11]   The viewers testified they inspected the landowners' properties and the gravel pit and traveled the proposed road. They determined the dust and noise caused by haul vehicles would not impact any of the landowners' buildings because none existed along the proposed or existing roadway. They contacted South Dakota and Wyoming county clerks, assessors, and real estate professionals in an effort to identify sales of comparable properties where private roads had been established. When they investigated similar situations, they found no evidence the remaining lands either increased or decreased in value after establishment of the private roads. They reviewed Mr. Hulm's appraisals of Crago's and Elk Horn's properties and Mr. Hutchinson's estimate of damage to Hutchinson's property. The viewers adopted Mr. Hulm's per acre values for the properties before the establishment of the private road concluding those values were based on comparable sales. However, they rejected Mr. Hulm's opinion of the diminution in value of the remaining properties that would be caused by the private road because they could not find any circumstance where a private road caused a diminution in the value of the affected property other than from the taking of the actual roadway itself. They also concluded the current highest and best use of the property was as agricultural land and refused to consider Mr. Hulm's opinion that the road would limit future development of secluded, executive home sites. None of the landowners had made proposals for subdividing their properties for such use.

[¶ 12]   After extensive cross-examination of the viewers, the landowners presented their evidence of damages which included Mr. Hulm's testimony regarding the Crago and Elk Horn appraisals. Mr. Hulm testified he applied several adjustments to the comparable sales he identified in order to account for the increase in value caused by providing legal access where none had existed (e.g., Crago's property) and to estimate the diminution in value to the remaining properties considering market resistance to properties with private haul roads through them. His report provided a complex theory which resulted in differing values for different parcels depending on their proximity to the road and the effect on future development potential as well as estimating the cost of alterations that could be required to maintain an efficient agricultural operation. However, he was unable to identify actual comparable property sales for which the value was diminished because a private road was located on the land. He also acknowledged he had never performed a private road appraisal under § 24–9–101 prior to completing the Crago and Elk Horn appraisals.

[¶ 13]   After presentation of all the evidence, the board had to determine which evidence was most persuasive—the landowners who claimed, in addition to the lands taken by the roadway itself, the value of their remaining properties would be substantially diminished or the viewers who concluded the only damage was the per acre value of the lands taken for the roadway. The board carefully considered all the evidence and chose to give the viewers' testimony more weight and credence than the appraiser's testimony. The board's order provides numerous detailed findings which, for the most part, set out a thorough and accurate summary of the evidence. We will not substitute our judgment for that of the agency when

8.

    The viewers and appraisers so appointed, or a majority of them, shall make a report to the county commissioners at the next regular session, of the private road so located by them, and also the amount of damages, if any, assessed by them, and the person or persons entitled to such damages, and if the commissioners are satisfied that such report is just, and after payment by the applicant of all cost

of locating such road, and the damages assessed by the viewers, the commissioners shall order such report to be confirmed and declare such road to be a private road, and the same shall be recorded as such. Any person aggrieved by the action of the board or as to the amount of damages awarded, may appeal to the district court at any time within thirty (30) days after said road is finally established by said board of county commissioners.

substantial evidence supports the decision. *Newman,* 2002 WY 91, ¶ 12, 49 P.3d 163.

[¶ 14] We hold the board's finding that the appraiser, Mr. Hulm, did not use comparable sales or the sales comparison method to be unsupported by the evidence. Mr. Hulm's testimony and the two appraisal reports demonstrate he did use comparable sales but also applied adjustments. The application of adjustments is a standard real estate appraisal practice, and no evidence was submitted to indicate these particular adjustments were invalid or violated the Uniform Standards of Professional Appraisal Practice. Wyo. Stat. Ann. § 33–39–107 (LexisNexis 2001); [9] *see* The Appraisal of Real Estate ch. 17 (10th ed.1992). However, this error does not alter our conclusion that substantial evidence supported the board's decision regarding appropriate damages. The board simply found the appraiser's opinion less persuasive than that of the viewers which was well within the board's discretion.

[¶ 15] With regard to the establishment of private roads, "the legislature intended the procedure under [§ 24–9–101] to provide in a local forum a readily available, economically affordable, and time efficient method to obtain a means of access to property." *Martens v. Johnson County Board of Commissioners,* 954 P.2d 375, 380 (Wyo. 1998). It is our role, in reviewing private road decisions of county boards of commissioners, to further that legislative intent and leave intact county decisions based on the recommendation of local landowners, who were sworn to be fair and impartial, of the damage caused by the grant of a private road.[10] This is particularly true in this case where the viewers did everything within reason to thoroughly investigate and evaluate the damages.

[¶ 16] We will not capitulate to the landowners' efforts to relitigate their case on

appeal. "Our task is not to reweigh the evidence." *Leavitt v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 980 P.2d 332, 335 (Wyo.1999). We conclude substantial evidence supported the findings and, therefore, affirm.

## B. Viewers' Location of Cattle Guards

[¶ 17] The landowners argue there was no instruction given to the viewers to establish cattle guards and the statute did not provide such authority. The damages instructions stated, in relevant part and consistent with Wyo. Stat. Ann. § 24–9–102 (LEXIS 1999) (repealed 2000), "The viewers and appraisers shall have power to determine in all cases whether or not gates shall be placed at the proper points on said road, and assess damages in accordance with such determination." As noted previously, the record does not indicate the landowners objected to these damages instructions being given to the viewers. The viewers testified they followed the instructions and thought cattle guards would better serve all parties' interests than conventional gates would.

[¶ 18] The landowners' objection to this requirement is somewhat obtuse. They appear to contend only a manually operated gate could be required and the board's action ordering placement of cattle guards exceeded its statutory authority. We reject this contention on the basis of our holdings in *Van Raden v. Harper,* 891 P.2d 78 (Wyo.1995), and *Weiss v. Pedersen,* 933 P.2d 495 (Wyo. 1997). In *Van Raden,* we held as a matter of law that installing cattle guards on a right-of-way easement is a permissible improvement of an easement and does not materially increase the burden of the servient estate. 891 P.2d at 79. In *Weiss,* we recognized *Van Raden* and applied the principle to an alleged prescriptive right-of-way or access easement.

---

9.

> Each certified real estate appraiser issued a permit to practice under this act shall comply with the standards of professional appraisal practice and ethical rules specified by the Uniform Standards of Professional Appraisal Practice.

10. We have held, "there is no requirement in § 24–9–101 that a petitioner for a private road must overcome every obstacle standing in his

way, regardless of the expense and impracticability." *Miller,* 4 P.3d at 887. Nor will we force a landlocked property owner to choose a wholly illogical, uneconomical, and unproductive road. *Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991). Further, and most recently in *Mayland,* 2001 WY 69, ¶ 26, 28 P.3d 838, we refused to require the proponent to go to extraordinary effort, such as a quiet title action, to prove other access may have been available over public lands.

933 P.2d at 500. The purpose of the private road is to provide the landlocked owner with reasonably convenient access to his property without imposing an inordinate burden on the servient property owner. *See Ferguson Ranch, Inc. v. Murray,* 811 P.2d 287, 290 (Wyo.1991). Cattle guards create no more, and likely create less, of a burden than gates do on the servient landowners. We conclude the board did not err by adopting the viewers' recommendation.

## C. Approval of the Survey

[¶ 19] The landowners argue the board should not have approved the survey map as presented because it did not place the private road on Hutchinson's property at the same location as the prior existing road easement. This issue is fully resolved by the parties' stipulation to the location which the viewers relied on at the parties' request. The problem apparently arises because the preexisting road on Hutchinson's property was not located, as everyone had mistakenly believed, on the recorded easement. The attorney for Redi Mix summarized the agreement for the hearing examiner and the board in precise language:

> [T]he landowners involved, namely Roberta Hutchinson Trust, the Fortak family through their corporation [Elk Horn], and the Crago Ranch Trust ..., have agreed to a road location that, I believe, is contained in the return by the viewers.... It is an alternate location, a location other than the existing roadway in so far as the ... Elk [Horn] Ranch is concerned and the Crago Ranch Trust is concerned. *It is the existing roadway, as the existing roadway passes through the Roberta Hutchinson Trust property.* And I would stipulate that we have all agreed to the alternate location, the alternate route. We are not now requesting a route along the existing roadway with the exception of the roadway as it passes through the Roberta Hutchinson Trust, which is the existing roadway.

(Emphasis added.) The landowners' attorney responded by stating, "[t]he only thing I would add," and then he made some comments about the new routes contemplated for Elk Horn's and Crago's properties. He said nothing to alter, or question, the representa-

tions made regarding the stipulation to the location of the road on Hutchinson's property. The counsel's representations demonstrate all the parties negotiated and accepted the stipulation.

Stipulations are favored by courts. *Beard v. Beard,* 368 P.2d 953, 955 (Wyo. 1962); 83 C.J.S. *Stipulations* § 2 (1953). *See Bard Ranch, Inc. v. Weber,* 538 P.2d 24, 31 (Wyo.1975) (citations omitted) stating that "[t]he parties are bound by the stipulation of facts just as they are bound by admissions in pleadings."

*Cummins v. Albany County Credit & Collection Bureau, Inc.,* 821 P.2d 1296, 1297 (Wyo. 1991). The landowners did not contend the stipulation was misstated and had a full opportunity to provide any clarification they deemed necessary. Yet they attempt in this appeal to suggest Hutchinson's property will incur additional damages because the board acted on their stipulation and approved the survey. We hold the stipulation was valid and the board properly relied upon it in approving the survey.

[¶ 20] Affirmed.