**A.B. CATTLE COMPANY, a Wyoming corporation, Appellant (Defendant),**

v.

**FORGEY RANCHES, INC., Appellee (Plaintiff).**

No. 97–8.

Supreme Court of Wyoming.

Aug. 12, 1997.

Barry G. Williams and Houston G. Williams of Williams, Porter, Day & Neville, P.C., Casper, for appellant.

B.J. Baker and Harry B. Durham, III, of Brown, Drew, Massey & Sullivan, Casper, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Appellant A.B. Cattle Company appeals from the bench trial verdict and judgment awarding Forgey Ranches, Inc. a prescriptive easement of a road located on A.B. Cattle Company's land.

We reverse and remand with instructions that judgment be entered for A.B. Cattle Company.

## ISSUES

A.B. Cattle Company presents these issues for our review:

A. Did the trial court err based upon its findings of fact, as stated in its decision letter and judgment, in its legal conclusion that the Plaintiff's (Appellee's) predecessors in title, the Groves', use of the right of way was hostile and adverse and that the evidence presented was sufficient to overcome the presumption of permissive use?

B. Did the trial court err in finding that Plaintiff's predecessors' use of the right of way was adverse and hostile to the owners of the "Servient Estate" for any continuous prescriptive ten (10) year period?

Forgey Ranches does not present a statement of the issues.

## FACTS

No transcript of the trial was made. In accordance with WYO. R.APP. P. 3.03, the district court settled the record for appeal to be the findings of fact of the judgment and order, the defendant's statement of the evidence, the deposition of Art Boatright, and the plaintiff's objections to defendant's statement of the evidence.

In its judgment and order, the district court specifically found as follows:

1. In 1930, Mr. and Mrs. George Grove (the "Groves") occupied land in Natrona County, Wyoming, under the Homestead Act and eventually acquired title.

2. The Groves reach their property by a road which crossed land now owned by the defendant.

3. The Groves used this road for approximately 60 years.

4. The Groves never asked nor obtained permission from anyone.

5. The Groves believed that they had the right to use the road.

6. The Groves mistakenly believed that a portion of the road was on their land.

7. The Groves made some improvements on this part of the road.

8. Until 1942, the Groves did not know the owners of the property they were crossing.

The district court concluded as follows:

1. Plaintiff's predecessors in interest, the Groves', use of the right of way was adverse and hostile to the rights of the owners, under claim of right, such as to put the owner of the servient estate on notice.

2. The adverse use was continuous and uninterrupted for a period in excess of ten (10) years.

3. The evidence is sufficient to overcome the presumption that use of an easement is permissive.

4. Plaintiff acquired the prescriptive easement which the Groves had established.

5. Plaintiff is entitled to the relief sought in the amended complaint.

The district court order ruled that Forgey Ranches, Inc. is the owner of a permanent easement and right-of-way over and across the property of A.B. Cattle Company. For appeal, the following facts were also included in the settled statement of evidence:

Iona Grove had been a resident of Natrona County for over 60 years and had married George Grove in 1930. At the time they were married, they lived in an apartment in Casper, Wyoming. After they were married in 1930, they moved a shack on to the property known in this lawsuit as the George Grove property, and proceeded to homestead that property. They received their homestead patent on May 2, 1935. At the time,

they did not know who owned the property now owned by A.B. Cattle Company. The road as it currently exists did not exist at the time they homesteaded the property. Their road access to their homestead was in a different location from the present road. The Bureau of Reclamation, in connection with the Kendrick Project, improved the road in its current location in approximately 1939–1940. George Grove's brother, Joe, purchased the property now owned by A.B. Cattle Company on May 8, 1942. There was a good relationship between George Grove and Joe Grove at all times; the two had been in business together. A.B. Cattle Company and Art Boatright were good neighbors. The Groves never asked permission to use the road from either the original owner of the property, or from Joe Grove or A.B. Cattle Company.

A.B. Cattle Company also claims that the following are relevant facts from the deposition of Art Boatright:

There was no regular travel on the road except Boatrights and George Grove. A right-of-way was never discussed with George Grove, as he was a good neighbor and friend of Boatright. Boatright testified that there was never a necessity for him to give Iona and George Grove permission to use the right-of-way. A.B. Cattle Company plowed the roadway right up to the Groves house so they could get back and forth. If the Groves wanted to come on to A.B. Cattle Company's pasture, they could as the gate was never closed. Mr. Boatright said he couldn't and wouldn't stop the Groves from using the road. Mr. Boatright testified he did not want Forgey's personnel using the road, and he stopped them.

Forgey's objections to the statement of the evidence and which the court ordered to be part of the settled record are these:

Mr. and Mrs. Grove moved onto and began homesteading the property which is now owned by Forgey Ranches, Inc. in 1930. Mrs. Grove lived on the property that she and her husband homesteaded continuously from 1930 until she sold the property to Forgey Ranches, Inc. in 1994. During all that period of time, which was more than sixty years, she, her husband, until he died,

and all their visitors used roads crossing the land now owned by A.B. Cattle Company to gain access to their homestead. At the time the Groves moved onto their homestead in 1930, they did not know who owned the land which is presently owned by A.B. Cattle Company. At that time the land was occupied and used by a sheep rancher by the name of McCarthey, and the only access to their homestead was over an unimproved road or trail which crossed the land now owned by A.B. Cattle Company. When Mr. McCarthey learned that Mrs. Grove and her husband were homesteading their property he became very belligerent with them and told them he did not want them to homestead or to use the road to get to their land. In spite of the threats of Mr. McCarthey, the Groves continued to use the road to access their land. Neither Mr. McCarthey nor anyone else ever took any legal action to prevent them from using the road.

The Groves continued using the original access road across the lands now owned by A.B. Cattle Company until the Bureau of Reclamation constructed a new improved road in connection with an irrigation ditch. This road also crossed the property now owned by A.B. Cattle Company. Mrs. Grove's best recollection was this road was constructed some time around 1939. At the time this road was built, Mrs. Grove still did not know who owned the property which is presently owned by A.B. Cattle Company. She and her husband believed that they had a right to use the new road because it had been built by the United States Government. At the time the new road was built, Mr. and Mrs. Grove discontinued using the old road and always used the new road along the ditch. This continued until she sold the place to the Forgeys.

George Grove's brother, Joe Grove, purchased the property now owned by A.B. Cattle Company in 1942. George and Iona Grove were using the existing road under a claim of right prior to the time that Joe Grove purchased the land. They never asked or received permission from Joe Grove to use the road. After Joe Grove sold his land to A.B. Cattle Company in 1969, the Groves continued to use the road across the

land as a matter of right. They never asked A.B. Cattle Company for permission to use the land. A.B. Cattle Company never gave them permission to use the road over the A.B. Cattle Company land. The Groves and Art Boatright were good neighbors and got along, but Art Boatright and his employees on some occasions did attempt to stop visitors to the Groves from using the road. The Grove visitors always asserted their right to use the road and continued to use it without any legal challenge from Art Boatright. Rebecca Lincoln testified that she could distinctly recall two specific occasions when she was stopped by Art Boatright or his employee when she was using the road. One time was when she was about 14 or 15 years old and the other was in 1987. She testified that on both occasions she told Art Boatright and the other employee of A.B. Cattle Company that she was using the road as an invitee of George and Iona Grove, and Art Boatright and A.B. Cattle Company made no further attempt to stop her from using the road.

Forgey believes the following additional facts from the deposition of Art Boatright are relevant. Art Boatright has always been the president of A.B. Cattle Company. At the time A.B. Cattle Company purchased the land it presently owns, over which the easement passes, all the stock in the company was owned by Art Boatright. Art Boatright inspected the property prior to the time he bought it. At the time Art Boatright purchased the land he noticed the right-of-way used by the Groves. George Grove was using the right-of-way road at the time Art Boatright purchased the property. The right-of-way was never brought up as a subject of discussion at the time of the closing of the A.B. Cattle Company purchase of the land. At that time Art Boatright knew that George and Iona Grove owned the adjoining land and that they lived on the land.

Art Boatright observed that George and Iona Margaret Grove used the right-of-way to their place and had been using the right-of-way at the time he purchased the property. He testified that he never stopped George or Iona Margaret Grove from using the right-of-way. He stated specifically that he couldn't and wouldn't stop them from

using the right-of-way. He finally testified that he never gave George Grove or Iona Grove permission to use the right-of-way. He said there was no necessity to do so.

## DISCUSSION

*Standard of Review*

 The determination of the facts which lead to either the presumption of adverse and hostile use or the presumption of permission are within the prerogative of the trial court. *Shumway v. Tom Sanford, Inc.,* 637 P.2d 666, 670 (Wyo.1981). Applying our traditional standard of review to determine whether sufficient evidence supported the district court's factual findings, we assume that the evidence in favor of the successful party is true, leave out of consideration entirely the conflicting evidence presented by the unsuccessful party, and give the evidence of the successful party every favorable inference that may reasonably and fairly be drawn from it. Furthermore, a reviewing court cannot substitute its judgment of the facts for that of the trial court unless the trial court's judgment is clearly erroneous or contrary to the great weight of the evidence. *Estate of McCormick,* 926 P.2d 360, 362 (Wyo.1996).

*Prescriptive Easement*

 A prescriptive easement cannot be acquired without proof of adverse use; claim of right under color of title or claim of right; use of a kind as to put the owner of the subservient estate on notice of the claim; and use which is continuous and uninterrupted adverse use for at least ten years. *Prazma v. Kaehne,* 768 P.2d 586, 589 (Wyo.1989); *see also Caribou Four Corners, Inc. v. Chapple–Hawkes, Inc.,* 643 P.2d 468, 471 (Wyo. 1982). The claimant bears the burden of proving these four elements. *Prazma,* 768 P.2d at 589.

██ ██ In Wyoming,

a landowner claiming an easement by prescription in an unimproved road crossing the lands of his neighbor must assume the burden of establishing that his intention to make a hostile use of the road adverse to the interests of his neighbor was brought

home to the neighbor in a clear and unequivocal way. His subjective intent will not be considered material, and while it is likely true that a manifestation of his hostile and adverse intent will result in revocation of permission to use the road across the neighbor's land, this is the best posture for the law to assume in the State of Wyoming. The claimant cannot rely upon a presumption [of hostile and adverse use] arising out of the open, notorious, continuous and uninterrupted use for the prescriptive period, but in the absence of more that use will be presumed to have been with permission. To rebut this presumption the claimant must introduce evidence of the facts which demonstrate the manner in which the hostile and adverse nature of his use was brought home to the owner of the adjacent land.

*Weiss v. Pedersen,* 933 P.2d 495, 501 (Wyo. 1997) (quoting *Shumway,* 637 P.2d at 670).

A.B. Cattle Company contends that Forgey did not present facts demonstrating hostile and adverse use for the prescriptive period and the district court did not make a specific finding of any facts establishing hostile and adverse use. It further argues that the district court's legal conclusion that Groves' use was adverse is against the great weight of the evidence.

 Adverse or hostile use is use inconsistent with the rights of the owner, without permission asked or given, use such as would entitle the owner to a cause of action against the intruder. *Koontz v. Town of Superior,* 746 P.2d 1264, 1268 (Wyo.1987). Viewed in the light most favorable to Forgey, the record shows that two roads were used by the Groves. They used the first road from 1930 until 1939 when they began using the road built by the federal government. The Groves believed they had a right to use the second road because it was built by the federal government, believed they owned some of the land the road was on, and made improvements on it. In 1942, George Grove's brother, Joe, became the owner of the land now owned by A.B. Cattle Company, and the Groves continued to use the road crossing his land. In 1969, A.B. Cattle Company, the

stock of which is owned by Art Boatright, purchased the land, and the Groves continued to use the land.

Forgey contends that the Groves' use of the first road was a hostile entry because McCarthy opposed their use. There is only evidence that McCarthy was an occupier of the land, not an owner, and the Groves did not use the first road for the prescriptive period. The road at issue in this case is the second road, and Forgey contends that because Groves continuously used the second road without permission from Joe Grove and Boatright, their hostile and adverse intent was demonstrated. A similar argument was presented in *Weiss*, and we ruled that continuous use alone does not rebut the presumption that the claimant had the landowner's permission. *Weiss*, 933 P.2d at 501. Although Groves used the road first, nothing in the record suggests that their use after Joe Grove also began using the road as a means of accessing his property was adverse; and because neither Joe Grove nor Boatright ever refused the Groves use of the road, we must conclude that the use was permissive. *Prazma*, 768 P.2d at 589.

We agree with A.B. Cattle Company that the great weight of the evidence which does not conflict with evidence in favor of Forgey is against finding that the use was adverse. As the brother and business partner of George Grove, Joe Grove's act in not stopping the Groves from using the road supports the presumption of permissive use. Boatright's longtime friendship with the Groves and his acts, such as plowing the road up to the Groves property in order for the Groves to be able to use the road and allowing the Groves' guests to use the road, support the presumption of permissive use. In 1994, Mrs. Grove sold her property to Forgey. Boatright did not want Forgey personnel using the road; he stopped them, and Forgey filed suit. Boatright's acts towards Forgey also support the presumption that the Groves permissively used the road.

█ Prescriptive rights and easements are not favored in the law, and neighborliness and accommodation to the needs of a neighbor are landmarks of our western lifestyle. *Shumway*, 637 P.2d at 670. The

facts, even in the light most favorable to Forgey, do not present any evidence which demonstrates the manner in which the Groves manifested to Joe Grove or Boatright the hostile and adverse nature of their use of the road. *Id.* The facts describe permissive use to accommodate a neighbor.

We reverse the decision of the district court and remand with instructions to enter judgment for A.B. Cattle Company.