2003 WY 134

John YEAGER, Lawrence A. Durante, John Reilly, and George Rogers, Appellants (Defendants/Counter Claimants),

v.

Waldo E. FORBES, William C. Forbes, Sarah P. Forbes and Edith L. Forbes, as Trustees of the Beckton Trust, and Waldo E. Forbes and William C. Forbes As Trustees of the Hillside Street Trust, Appellees (Plaintiffs).

No. 02–167.

Supreme Court of Wyoming.

Oct. 24, 2003.

Representing Appellants: Timothy C. Kingston of Graves, Miller & Kingston, P.C., Cheyenne, Wyoming.

Representing Appellees: Tom C. Toner of Yonkee & Toner, LLP, Sheridan, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] This is a dispute over public access along the Soldier Creek Trail or Toll Road (the Trail) that crosses private land abutting the Big Horn National Forest in Sheridan County. John Yeager, Lawrence A. Durante, John Reilly, and George Rogers (collectively the Defendants) appeal a summary judgment granted by the district court permanently enjoining them from entering upon or traveling across lands owned by Waldo E. Forbes, William C. Forbes, Sarah P. Forbes, and Edith L. Forbes, as Trustees of the Beckton Trust, and Waldo E. Forbes and William C. Forbes as Trustees of the Hillside Street Trust (collectively the Forbeses). The Defendants also appeal a summary judgment order of the district court denying a Motion to Intervene filed by the Wyoming Wildlife Federation, Raymond Hutson, Dan Biebel, Fred Kusel, and Dan Reinke (collectively interveners).

[¶ 2] Initially, we conclude that the Defendants have not timely appealed the district court's decision on the Motion to Intervene. We also find that the Trail is not a public road under Wyoming law and that the Defendants have not alleged facts sufficient to support a claim for a private or public prescriptive easement. Therefore, we affirm the summary judgment.

## ISSUES

[¶ 3] The Defendants set forth three issues for review:

1. Is the Soldier Creek Toll Road or Soldier Creek Trail a public road or trail pursuant to 43 U.S.C. § 932?

2. Do the [Defendants] and the general public enjoy a prescriptive easement right in the use of the Soldier Creek Toll Road or Trail?

3. Should the proposed interveners have been allowed to intervene in the case?

The Forbeses respond with a list of seven issues:

1. Where the Board of County Commissioners never determined that the Soldier Creek Trail was necessary or important for public use and did not officially record the Soldier Creek Trail as a public road by January 1, 1924, as required by 1919 Session Laws, ch. 112 and 1921 Session Laws, ch. 100, did the District Court correctly determine that the Soldier Creek Trail is not a public road?

2. Did the District Court correctly determine that there was no public prescriptive easement over the Soldier Creek Trail?

3. Did the District Court correctly determine that the Defendants had no private prescriptive easement over the Soldier Creek Trail?

4. Did the District Court correctly refuse to grant Defendants' motion to determine that the Soldier Creek Trail was a public road as a matter of law?

5. Was the notice of appeal of the order denying intervention timely filed?

6. Do the Defendants have standing to appeal from an order denying a motion to intervene filed by a third party?

7. Did the District Court properly deny the Intervenor's [sic] motion to intervene as of right under Wyo. R. Civ. P. 24(a)(2)?

## FACTS

[¶ 4] Many of the facts underlying this case are the subject of dispute between the parties, especially those relating to the establishment and historical use of the Trail. Our view of the evidence on appeal is determined by the procedural status of the case:

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which has been asserted by the parties. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. We do not accord any deference to the district court's decisions on issues of law.

*Matlack v. Mountain West Farm Bureau Mutual Insurance Company,* 2002 WY 60, ¶ 6, 44 P.3d 73, ¶ 6 (Wyo.2002) (quoting *Baker v. Pena,* 2001 WY 122, ¶ 6, 36 P.3d 602, ¶ 6 (Wyo.2001) (citations omitted)).

[¶ 5] The Forbeses' ranch contains lands in Sections 22, 29, 30, and 31 of Township 55 North, Range 86 West, 6th P.M., Sheridan County, Wyoming. The parcels of land were added to the Forbeses' ranch over time through patenting by their ancestors or through purchase from other parties between 1903 and 1939. The Soldier Creek Trail or Toll Road provides access to the Big Horn National Forest and adjacent state trust lands. It begins at the western terminus of the Beckton Big Horn Mountain Road (County Road No. 52 also commonly referred to as the P K Lane). The Trail begins on property owned by the Forbeses at the western terminus of the P K Lane and winds across state land and crosses back onto the Forbeses' property before it enters the Big Horn National Forest.

[¶ 6] While there is a serious dispute between the parties as to whether or not the Trail existed prior to the Forbeses' homestead of the land, there is some evidence suggesting that The Sheridan, Bald Mountain and Big Horn Basin Toll Road Company may have constructed the Trail in 1891 or 1892 to provide miners access to the Big Horn Mountains. According to the Defendants' affidavits, the public has used the Trail since its inception. The use of the Trail has ranged from running of cattle to state grazing lands at Walker Prairie since the early 1900's to outfitters and guides taking hunters into the Big Horn National Forest. The individual Defendants also set forth their own use of the Trail. John Yeager has used it to take clients to hunting camps in the Big Horn National Forest as a licensed outfitter since the late 1970's. George Rogers has used the Trail personally and as a licensed outfitter and guide since 1981. Larry Durante and John Reilly have used the Trail for personal enjoyment since 1990 and 1981 respectively.

[¶ 7] Historically, the Forbeses have maintained signs along the Trail. While there is a dispute between the parties as to when the signs were originally put up, the Defendants acknowledged in their depositions that they have been in place since at least the early 1980's. The signs informed users that they had permission to use the Trail to access the Big Horn National Forest and if they desired to use the Trail for any other purpose, they had to obtain prior permission from the Forbeses. There were also signs prohibiting hunting on the Forbeses' property.

[¶ 8] In 2001, the Forbeses apparently became exasperated with gates being left open along the Trail, interfering with their ranching operations. Accordingly, the Forbeses rerouted the Trail at its eastern terminus at the end of the P K Lane. A new sign was erected informing the public that they could use the new route at their discretion, but that if they desired to use the old route, they had to call in advance for permission. The Defendants disputed the right to alter the Trail because they believed that it was a public road. At least two of the Defendants were cited for trespassing for using the old route without obtaining the prior permission from the Forbeses.

[¶ 9] On November 6, 2001, The Board of County Commissioners of Sheridan County held a public meeting. One of the items on the agenda was the dispute over the public or

private nature of the Trail. The Board's minutes describe the consideration given to the issue:

The Board now addressed a request from Cam and Spike Forbes regarding clarification on the Soldier Creek Toll Road. Chairman Brad Waters addressed the public, and read the following statement, which was prepared by the County Attorney, Matt Redle. "1) Interested parties have indicated their belief that the trail crossing the Forbes' property is a public road. Some have suggested that the trail lies along the route of the Soldier Creek Toll Road established by the Soldier Creek Toll Road Company in 1889 pursuant to Wyo.Rev.Stat. § 525 (1887). 2) A review of pertinent records of Sheridan County fails to show that Sheridan County ever established the trail in question as a county road pursuant to applicable Wyoming statute. 3) In 1907 Sheridan County did establish the Beckton–Big Horn Mountain Road (now known at "PK Lane") as a county road. It has been suggested by interested parties that the Beckton–Big Horn Mountain Road overlies the lower portion of the Soldier Creek Toll Road. 4) A review of pertinent records of Sheridan County fails to disclose that the County ever claimed the portion of the trail under dispute. Neither do those records disclose that the County has ever expended any funds for construction, maintenance or other improvement to the trail in dispute. 5) This does not necessarily resolve the issue of whether the trail in question is a public thoroughfare. Neither is it within the jurisdiction of this Board to determine the rights, if any, of the Forbes' or interested members of the public to the use of the trail. Jurisdiction to determine the property rights of the interested parties lies with the courts." Attorney Charles E. Graves, representing the "Citizens for Public Access" handed out a letter and addressed the Board at this time, Mr. Graves stated that he agreed with the statement prepared by the County Attorney and requested the Commissioners urge both sides to try to settle this issue, rather than have the courts decide the issue.

The Commissioners' exhortations were apparently insufficient. On November 20, 2001, the Forbeses filed a complaint in the district court requesting a declaration that the Defendants did not have any right to enter upon or travel across the Forbeses' land and asking for a permanent injunction prohibiting them from doing so. The Defendants responded by counterclaiming that: (1) The Trail was an established public road under Federal Revised Statute 2477 (1866), later codified at 42 U.S.C. § 932 (repealed 1976); (2) public use had established a public prescriptive easement; and (3) the Defendants' use had established a private prescriptive easement.

[¶ 10] On January 16, 2002, the Wyoming Wildlife Federation, Raymond Hutson, Dan Biebel, Fred Kusel, and Dan Reinke filed a Motion to Intervene as a matter of right pursuant to W.R.C.P. 24(a)(2). The district court denied the motion. The court noted that the Forbeses' request for injunctive relief was specifically limited in scope to the named Defendants and that the proposed interveners had acknowledged in their motion that, "Even if the Court were to render a judgment in favor of one or the other side in the case, it would not have the effect of addressing any other person's or entity's use of the [Trail]." Accordingly, the district court denied the Motion to Intervene because the proposed interveners had not alleged that any of their individual rights were being harmed or that they would be precluded from pursuing legal action to enforce those rights, if any.

[¶ 11] Subsequently, both parties filed motions for summary judgment, including supporting affidavits and exhibits. Without holding a hearing, the district court granted the Forbeses' motion. The district court concluded that it did not have "the authority to declare the existence of a public road by mere public use." The court also found that the Defendants had failed to show any notice to the Forbeses to support their prescriptive easement claims. The Defendants have appealed the grant of the Forbeses' motion for summary judgment and the denial of the proposed interveners' motion to intervene as a matter of right.

## STANDARD OF REVIEW

[¶ 12] As noted, this is a review of a summary judgment. In addition to the standard set forth above for reviewing the factual context, we review issues of law by according no deference to the district court's conclusions and may affirm its decision on any legal grounds appearing in the record. *WCCC v. Casper Community College*, 2001 WY 86, ¶ 11, 31 P.3d, 1242, ¶ 11 (Wyo.2001).

[¶ 13] Resolution of this matter requires application of our standards for interpreting statutory language:

[W]e look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Olheiser v. State ex rel. Worker's Compensation Div.*, 866 P.2d 768, 770 (Wyo.1994), citing *Parker Land & Cattle Co. v. Game & Fish Comm'n*, 845 P.2d 1040, 1042–43 (Wyo.1993). A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. *Parker Land & Cattle*, at 1043. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. *Id.* * * * Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court. *Id.*

. . . .

When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. *Tietema v. State*, 926 P.2d 952, 954 (Wyo.1996); *Butts v. State Board of Architects*, 911 P.2d 1062, 1065 (Wyo.1996). Instead, our inquiry revolves around the ordinary and obvious meaning of the words employed according to their arrangement and connection. In doing so, we view the statute as a whole in order to ascertain its intent and general purpose and also the meaning of each part. "We give effect to every word, clause and sentence and construe all components of a statute *in pari materia.*" *Parker*, 845 P.2d at 1042.

*In Re Termination of Parental Rights to IH*, 2001 WY 100, ¶ 17, 33 P.3d 172, ¶ 17 (Wyo. 2001) (quoting *Murphy v. State Canvassing Board*, 12 P.3d 677, 679 (Wyo.2000)). "We endeavor to interpret statutes in accordance with the legislature's intent." *Wyodak Resources Development v. Board of Equalization*, 2001 WY 92, ¶ 7, 32 P.3d 1056, ¶ 7 (Wyo.2001) (quoting *Exxon Corporation v. Board of County Commissioners Sublette County*, 987 P.2d 158, 161–62 (Wyo.1999)). When examining a statute, we presume "that the legislature enacts legislation with full knowledge of existing law and with reference to other statutes and decisions of the courts. Such legislation should, therefore, be construed in a way that creates a consistency and harmony within the existing law." *Hoff v. City of Casper–Natrona Health Department*, 2001 WY 97, ¶ 30, 33 P.3d 99, ¶ 30 (Wyo.2001) (quoting *Capwell v. State*, 686 P.2d 1148, 1152 (Wyo.1984)).

## DISCUSSION

*Denial of Motion to Intervene*

[¶ 14] A motion to intervene as a matter of right pursuant to W.R.C.P. 24(a)(2) [1] was filed by the Wyoming Wildlife Federation and four individuals. The district court denied the motion on April 25, 2002. The denial of a motion to intervene is a final and appealable order pursuant to W.R.A.P. 1.05. *James S. Jackson Company v. Horseshoe Creek Ltd.*, 650 P.2d 281, 284–85 (Wyo. 1982). An appeal must be taken within thirty days from the entry of the appealable order. W.R.A.P. 2.01(a). The Defendants filed their notice of appeal from the district court's denial of the motion to intervene on July 19, 2002, in conjunction with their notice of appeal of the district court's summary judgment order. The Defendants' notice of appeal of the denial of the motion to inter-

---

1. **Rule 24. Intervention** . . . .

*(a) Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action:

. . . .

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

vene was not filed within the prescribed thirty-day period for final orders. The failure to timely file a notice of appeal deprives this Court of jurisdiction to hear the appeal. W.R.A.P. 1.03; *Harding v. Glatter*, 2002 WY 124, ¶ 6, 53 P.3d 538, ¶ 6 (Wyo.2002). Accordingly, we must dismiss the Defendants' appeal of the denial of the motion to intervene.[2]

*R.S. 2477*

[¶ 15] The Defendants contend that a company constructed the Trail across what was then federal land in 1891 or 1892 to provide access for miners and their equipment to the Big Horn Mountain and Walker Prairie areas. The public used the Trail from its inception for logging, hunting, ranching, and recreation. According to the Defendants, the public's use predated the entry and patent of the surrounding land by the Forbeses' predecessors in the early twentieth century. The Defendants assert that the public use of the Trail was sufficient to establish a public road under R.S. 2477.

[¶ 16] R.S. 2477 was enacted as Section 8 of the Act of July 26, 1866, 14 Stat. 253, and later codified at 43 U.S.C. § 932.[3] The provision provided simply:

[That] the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.

The purpose of the statute was to enable the public to acquire a roadway to traverse public lands. However, the offer or grant set forth in R.S. 2477 "is but an offer of the right of way for the construction of a public highway on some particular strip of public land, and can only become fixed when a highway is definitely established and constructed in some one of the ways authorized by the laws of the state in which the land is situated." *Richter v. Rose*, 1998 MT 165, ¶ 27, 289 Mont. 379, 962 P.2d 583, ¶ 27 (1998) (quoting *State v. Nolan*, 58 Mont. 167, 173, 191 P. 150, 152 (1920)). In other words, R.S. 2477 is merely an offer from the federal government

that could be accepted by actions taken locally. Barbara G. Hjelle, *Ten Essential Points Concerning R.S. 2477 Rights-of-Way*, 14 Journal of Energy, Natural Resources, & Environmental Law, 301, 303 (1994). The question of whether a road is a public road under R.S. 2477 is answered by reference to the law of the state where the land is located. *Richter*, 962 P.2d 583, ¶ 27; *Western Aggregates, Inc. v. County of Yuba*, 101 Cal. App.4th 278, 296, 130 Cal.Rptr.2d 436 (Cal. App.3rd Dist.2002); *Sierra Club v. Hodel*, 848 F.2d 1068, 1083 (10th Cir.1988); Hjelle, *Ten Essential Points Concerning R.S. 2477 Rights-of-Way*, *supra*, at 305–08.

[¶ 17] Like the road system in many states in the American West, the road system in Wyoming developed from a haphazard diagram of trails established by Indians, pioneers, stockmen, miners and loggers, and more "proper" roads set out by railroads, stagecoaches, the federal government, and territorial, state, and local governments. As early as 1869, the Territorial Legislature enacted a law seeking to bring some sense of order to this system:

All roads within this Territory shall be considered public highways, which have been, or may hereafter be, declared Territorial roads by act of the Legislative Assembly, or which have been, or may be, declared public roads by the board of county commissioners of any county, within such county, or which have been, or shall hereafter be, used and traveled by the public, so that the same would, according to the course of the common law, be deemed public highways.

1876 Comp. Laws, ch. 102, Sec. 1 (1869). That law provided for the recognition of public roads through declaration by the Territorial Legislative Assembly or the relevant board of county commissioners. In a nod to the unique history of the development of roads and trails in the West, it also recognized that roads used by the public could be

---

**2.** The Forbeses also challenge the standing of the Defendants to appeal the denial of the motion to intervene. Since the notice of appeal was not timely, we need not address that issue.

**3.** The Federal Land Policy and Management Act (FLPMA) of 1976 repealed R.S. 2477 in 1976. 43 U.S.C. §§ 1701–1784. FLPMA specifically provided that any rights vested under R.S. 2477 prior to its repeal, however, remained valid.

deemed a public highway under the common law.

[¶ 18] In 1877, the Territorial Legislature amended Chapter 102 of the 1869 law and gave the board of county commissioners broad powers to declare public roads:

That the board of county commissioners of the several counties of the Territory of Wyoming shall have power to adopt, and by resolution entered of record, appropriate to county and public uses any road or route publicly traveled, within their respective counties, whether originally opened and laid out by them or not, and any road so adopted and appropriated to public purposes shall be and is hereby declared a public or county road to all intents and purposes, the same as if originally opened or laid out by them and subject to the same laws and regulations in all respects.

Session Laws of Wyoming, Wagon Roads, Sec. 1, at 135 (1877). The 1877 law continues to recognize that roads may be created by public use beyond the ordinary planning of a county. The law, however, appears to recognize such roads as public or county roads only when the board of county commissioners adopted and appropriated the road to county and public use. The specific language from the 1869 law authorizing the creation of roads by public use pursuant to the common law has been eliminated from this statute. This appears to be an attempt by the Territorial Legislature to impose some order on the chaotic creation of roads in the Territory's early years.

[¶ 19] The 1877 law lasted until 1886 when the Territorial Legislature again amended the statute:

That all county roads shall be under the supervision of the board of county commissioners of the county wherein said road is located, and no county road shall be hereafter established, nor shall any such road be altered or vacated in any county in this Territory except by authority of the county commissioners of the proper county.

Session Laws of Wyoming Territory, ch. 99, sec. 1 (1886). This was an obvious attempt by the legislature to further reduce the chaos in the creation of public roads. The statute placed authority for county roads under the supervision of the board of county commissioners and specifically stated that no future county roads could be created, vacated, or altered except by the authority of those commissioners.

[¶ 20] Then, in 1891 just before the Trail was constructed, the State legislature passed a law amending and re-enacting an 1890 territorial law that had slightly modified the 1869 law. That law provided:

All roads within this state shall be considered public highways, which have been or may be declared by law to be state, territorial or county roads. All county roads shall be under the supervision, management and control of the board of the county commissioners of the county wherein said road is located, and no county road shall hereafter be established, nor shall any such road be altered or vacated, in any county in this state, except by the board of the county commissioners of the county wherein such roads are located, except as is in this act provided.

Wyoming Session Laws, ch. 97, sec. 1 (1891). The 1890 law does not substantively change the 1886 law. The new statute adds the introductory phrase recognizing that some public roads are established under the law apart from the role played by the counties. The remainder of the statute simply reiterates the authority of the boards of county commissioners to establish, vacate, or alter county roads.

[¶ 21] The legislature returned to a broader definition of what constituted a public road in 1895:

§ 2513. Public roads defined. All roads within this state shall be public highways which have been or may be declared by law to be national, state, territorial or county roads. All roads that have been designated or marked as highways on government maps or plats in the record of any land office of the United States within this state, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the board of the county commissioners of the county wherein the same are located, are

declared to be public highways until the same are closed or vacated by order of the board of county commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the board of the county commissioners. 1910 Wyo. Comp. Stat. Ann. ch. 168, sec. 2513 (1895). The 1895 law continues to recognize as public highways those declared by law to be national, state, territorial or county roads. However, it also contained a provision recognizing roads marked on federal and state maps or plats, which were used by the public. The law treated these roads as public highways unless and until some affirmative action was taken by the responsible board of county commissioners to vacate or close the road.

[¶ 22] The 1895 statute was in effect when this Court was called upon to consider R.S. 2477 for the first time. In *Hatch Brothers Company v. Black*, 25 Wyo. 109, 165 P. 518 (1917), *affirmed on rehearing*, 25 Wyo. 416, 171 P. 267 (1918), the plaintiff sought to enjoin the defendant from blocking access on a road running across the defendant's land. The road in question had been established around 1875 or 1876 and used continuously since that time by the public. The plaintiff used the road to transport his sheep. In 1912, the defendant made a homestead entry onto the lands over which the road ran. The defendant began fencing off the road to prevent damage to his crops from the plaintiff's sheep.

[¶ 23] Initially, we concluded that a public road could be established pursuant to R.S. 2477 through public use:

The grant [contained in R.S. 2477] is unconditional and contains no provision as to the manner of its acceptance. We think it is quite well settled that when land is granted for a right of way for a public highway, the grant may be accepted by the public without action by the public authorities. The continued use of the road by the public for such a length of time and under such circumstances as to clearly indicate an intention on the part of the public to

accept the grant has generally been held sufficient.

*Hatch*, 165 P. at 519. The opinion then briefly reviewed Wyoming's statutory history relating to public roads noted above. *Id.*, at 519–20. We concluded that there was "nothing in these several statutes, as we understand them, prohibiting the public from accepting the grant of the right of way; but on the contrary, they appear to recognize that right." *Id.* After distinguishing between acceptance of a grant by the public and establishment of a road by prescription, the Court remanded the case for a determination by a jury whether the grant had been accepted by the public prior to the defendant's homestead entry. *Id.* at 520.

[¶ 24] On rehearing in *Hatch*, the question before the Court was the propriety of its conclusion that a public road could be established through the actions of the public without any official action by a governmental entity. 171 P. at 267. The Court's opinion expanded at length upon its conclusion that the 1895 statute did not impede public acceptance of a grant under R.S. 2477. It is worth quoting from the opinion at some length:

This dedication [R.S. 2477] by Congress to the public of rights of way for highways over the public lands of the United States is a valuable right, and **it is not to be presumed that the Legislature in this state,** where distances are great, county funds from taxation applicable to road work comparatively small and inadequate to meet the demands of the inhabitants in different parts of the county, where roads in new and sparsely settled portions of the state of necessity have to be made and traveled by the public without the aid of the county authorities, **intended to abrogate and annul this right** and open the way to legalized blackmail of the county authorities by fencing up such used roads and requiring the county thereafter to condemn and pay damages for a way otherwise belonging to the public, **unless such intention is so clearly expressed by the enactment that no other conclusion can be reached.** ... The original act of 1869 (Laws 1869, c. 26, p. 330) in the first section mentions all the different kinds of

highways, and recognized the common-law doctrine of establishment of highways by user without declaring any specific method or enacting any new law in this regard. It will be observed that the early act, while prescribing the method by which roads might be changed, altered, or new roads laid out by the county, does not anywhere enjoin on the county authorities the duty to maintain or keep in repair the highways mentioned in the act. . . .

This act remained in force until the act of March 12, 1886, which appears as chapter 99, Laws of 1886, and was entitled an act concerning roads and highways. . . .

. . . .

This is the first legislative word in Wyoming that specifically placed any roads under the supervision of the county commissioners and enjoined a duty upon the county officials to maintain and keep them in repair. This act provides for the election or appointment of road supervisors, and prescribes their duties, and the means for working the roads, but it is significant that wherever a duty is imposed by the act upon county officials in this chapter, it mentions *county* roads, and prescribes the width of *county* roads, etc. This act repeals in terms the act of 1869 which had become chapter 102 of the Compiled Statutes of 1876, but did not repeal any common-law doctrine thereby, and that it still recognized that the congressional grant could be accepted by public user, and that other highways existed and could be established besides those county roads provided for in the act . . .[.]

. . . .

. . . This act clearly shows that the object sought to be accomplished by the Legislature was prescribing those roads and highways in regard to which a duty was imposed to maintain or keep in repair. And this is in accord with the authorities that a dedication for a highway which is accepted by public user, while binding upon the dedicator and those holding under him, does not require the public authorities to maintain or care for the highway.

. . . .

The act of 1890 (Laws 1890, c. 86) did not in any way change the law in this respect, and the act of 1891 (Laws 1890–91, c. 97) merely amended the act of 1890, although it amended the first section of the act of 1890 by specifically adding to the declared public highways others beside *county* roads, and then specifically declares, as in the acts of 1869 and 1890, that *county* roads shall be under the management and control of the county commissioners, and shall not be established or vacated except by them. The act of 1895 (Laws 1895, c. 69), which is the present law of the state at all affecting this matter, in Section 1, reenacts the first paragraph of the law of 1891, and adding "national" to state, territorial, and county roads then enacts, in a separate sentence, the provision which led to the instruction declared erroneous in the original opinion in this case:

> "All roads that have been designated or marked as highways on government maps or plats in the record of any land office of the United States within this state, and which have been publicly used as traveled highways, and which have not been closed or vacated by order of the board of the county commissioners of the county wherein the same are located, are declared to be public highways until the same are closed or vacated by order of the board of county commissioners of the county wherein the same are located, and the board or officer charged by law with such duty shall keep the same open and in repair the same as in the case of roads regularly laid out and opened by order of the board of the county commissioners."

This provision clearly designates such roads as are to be added to those which the county authorities are required to maintain and repair, and in no way affects other highways upon which this duty may not be imposed. . . .

. . . .

It is evident it was not the legislative intention to take from the public a valuable right of acceptance of the federal grant,

but to preserve to it every and all rights it had.

. . . .

We hold, as in the original opinion, that **there is nothing in our statutes that takes away the right of the public to accept by unofficial user the federal grant of rights of way over the public domain so as to bind subsequent grantees of the government,** but our statutes seem to distinctly recognize that right.

*Hatch,* 171 P. at 268–69, 271 (italics in original; emphasis added). The opinion interpreted the 1895 statute and its predecessors to mean that the common law right and the right expressed in R.S. 2477 for the public to establish public rights of ways by usage was not abrogated. Instead, the legislature intended by the statutes to explicitly set forth what roads the counties were required to financially and physically maintain. The holding of the two opinions in *Hatch* was to the effect that public roads could be created by the public's use but the counties could not be forced to maintain them. There are two salient points that we can extract from the *Hatch* cases relevant to this case today: (1) the opinions make it clear that state law governs the status of public roads under R.S. 2477; and (2) the noted bold-faced passages indicate that the legislature has the power to abrogate the public's right under R.S. 2477.

[¶ 25] Eleven months after the decision on rehearing in *Hatch,* the Wyoming Legislature amended the public roads statute:

On and after January 1st, 1922, all roads within this State shall be highways, which have been or may be declared by law to be national, state, territorial or county roads or highways. It shall be the duty of the several Boards of County Commissioners, within their respective counties, prior to said date, to determine what if any such roads now or heretofore travelled [sic] but not heretofore officially established and recorded, are necessary or important for the public use as permanent roads, and to cause such roads to be recorded, or if need be laid out, established and recorded, and all roads recorded as aforesaid, shall be highways. **No other roads shall be highways unless and until lawfully established as such by official authority.**

Session Laws of Wyoming, ch. 112, sec. 1 (1919)[4] (emphasis added). We presume that this statute was enacted with full knowledge of and with reference to the recent decisions in *Hatch. Greenwalt v. Ram Restaurant Corporation,* 2003 WY 77, ¶ 22, 71 P.3d 717, ¶ 22 (Wyo.2003) (citing *Almada v. State,* 994 P.2d 299, 306 (Wyo.1999) ("We presume the legislature enacts statutes with full knowledge of the existing condition of the law and with reference to it.")). The legislative intent behind this statute is clear from its plain language: The various boards of county commissioners were to officially establish and record all roads necessary or important for the public use. The last sentence clearly states that *no* other roads were to be considered highways unless and until the respective board of county commissioners had lawfully established them as such. It would be 34 years, however, before this Court would consider R.S. 2477 within the context of the 1919 statute and, even then, no definitive ruling on the continued vitality of R.S. 2477 roads would be forthcoming.

[¶ 26] In 1953 this Court decided the case of *Nixon v. Edwards,* 72 Wyo. 274, 264 P.2d 287 (1953). The question before us was whether or not a road was a public road. The plaintiff built a road along the east side of his property sometime between 1931 and 1934. The defendants' land lay to the north and they began using the road to access their property around 1941. There was also evidence that at least some members of the public had been using the road since 1934. The road was never established as a public road by the county pursuant to the 1919 statute. The defendants had contended that

4. The legislature further amended this statute in 1921 by altering the first sentence to read: "On and after January 1st, 1924, all roads within this State shall be highways, which have been or may be declared by law to be national, state, territorial or highways." Session Laws, ch. 100, Sec. 1 (1921). The remainder of the 1919 statute was retained in the identical form. For the sake of simplicity, when we refer to the 1919 statute, we are incorporating the 1921 amendment. We are also referring to the statute as it is currently codified at Wyo. Stat. Ann. § 24–1–101 (LexisNexis 2003), which retains the language of the 1919 statute and the 1921 amendment verbatim.

the road was a public road through public use pursuant to R.S. 2477 and *Hatch* or a public easement had been established by prescription.

[¶ 27] We began our analysis in *Nixon* by reviewing pre–1919 legislation. We prefaced our review by affirming our statements in *Hatch* that whether or not a road was public was determined by reference to the statutes of Wyoming:

> It cannot be questioned, it seems, that what shall or shall not be public roads or highways is, subject to constitutional limitations, exclusively within the province of the legislature.

*Nixon*, 264 P.2d at 289. After noting the progression of the statutes pre–1919, we addressed the affect of the decision in *Hatch*:

> The case of *Hatch Bros. Co. v. Black, supra*, . . . is in no way in conflict with our conclusion herein. The case is based on the doctrine of public dedication and acceptance of the dedication by the public. The road in question was over public land and was used by the public since about 1875. A homestead was located on the land over which the road ran in 1912, and the question was as to whether or not the road over the land could be closed by locator. By an act of 1866, the United States provided that 'right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted.' 43 U.S.C.A. § 932. The court held that the grant by Congress could be accepted by user alone, and further stated that: 'We discover nothing in these several statutes, as we understand them, prohibiting the public from accepting the grant of the right of way; but on the contrary, they appear to recognize that right.' The court, in connection with the language just quoted, relied (1) upon the fact (apparently) that the road was shown on maps of the United States as mentioned in section 1 of the legislation of 1895, and further (2) upon the provisions of section 64 which preserved all rights previously acquired. Since the road in question in that case was established as early as 1875, the decision in the case was correct. The court, it is true, also mentioned (3) the words in section 57

> of the Act reading: 'When any public road heretofore laid out or traveled as such or *hereafter* to be laid out *or traveled* as a public road, * * *.' Section 57 did not relate to the establishment of any public road. It merely provided that when it was necessary in traveling on a public road to cross a stream, the crossing over the stream should be considered a part of the public road. The section is not necessarily inconsistent with section 2, when we the consider the general policy of the latter that rural public roads should hereafter be established only officially. If inconsistent, it is by reason of the use of 'or' instead of 'and'. See 82 C.J.S., Statutes, § 335, page 673. <u>It may be, however, that the court in the foregoing decision by italicizing the words above italicized meant that section 57 indicated that roads hereafter traveled publicly need not necessarily be established officially, and thus there might be roads which, if running over public land, might become public roads by user alone, thereby accepting the grant of the government.</u> **However this may be, it is not necessary to dwell upon the matter. It has no effect on the case at bar. The road in dispute herein does not run over public land.**

*Nixon*, 264 P.2d at 290–91 (internal citations omitted, underlining and bold added). The Defendants in this case have placed much stock in the underlined portion of the opinion quoted above. They suggest that this language means that the *Nixon* court upheld the continuing validity of the holding in *Hatch* that a public road could be established through public use even after the enactment of the 1919 statute. The Defendants' argument does not hold up to scrutiny when the sentence is read within the context of the paragraph quoted above. After noting an apparent inconsistency in the *Hatch* case regarding its interpretation of part of the 1895 law, the *Nixon* court noted that the inconsistency could be explained by the use of the connecting word "or" instead of "and." In the next sentence—the one cited by the Defendants—the *Nixon* court goes on to say that the court in *Hatch* **could** have meant to say section 57 of the 1895 statute "indicated that roads hereafter traveled publicly need

not necessarily be established officially" and that roads could thus be established without official action if they ran over public land. In context, the statement is merely a commentary on what the court in *Hatch* may have concluded in reference to the meaning of section 57 of the 1895 statute. The opinion expresses some doubt about that interpretation but then goes on to conclude that the matter is irrelevant to the case before it because the road in question was not established over public land before the land it was located on was homesteaded. Furthermore, the discussion by the *Nixon* court is in reference to the 1895 statute and does not touch at all upon the effect of the 1919 statute. Thus, contrary to the Defendants' assertions, the opinion in *Nixon* has no relevance as to whether a road established by public use but not officially recognized was still a public road in light of the 1919 statute.

[¶ 28] After dismissing the contention that the road in question could be a public road through public use under R.S. 2477, the opinion in *Nixon* turned to the effect of the 1919 statute on the claim that the road was public by virtue of a prescriptive easement. While the specific holding on that issue is not relevant to this case, the discussion regarding the 1919 statute does provide some relevant considerations for interpreting the legislature's intent in adopting it:

It may be noted at once, that while this court in [*Board of County Commissioners of Sheridan County v. Patrick*, 18 Wyo. 130, 104 P. 531 (Wyo.1909)], construed the then existing statutes as permitting the establishment by county commissioners informally, that is by mere recognition of a road, such as working it, the legislation of 1919 required that roads recognized as public to be made of record, thus carrying to its ultimate conclusion the former policy that it should be made certain and definite as to what were public roads, and thus superseding in that respect the ruling in the *Patrick* case, supra. The Act directed the board of county commissioners to determine what roads theretofore traveled, but not officially established and recorded, were necessary for the public use, and then cause those thus found to be necessary, to be made of record. **That includ-**

**ed all roads marked on Governmental plats and maps, as well as all roads, the rights to which had been recognized by former legislative acts. It was meant to be all inclusive, and then specifically provided that 'No other roads shall be *highways* unless and until lawfully established as such by official authority.' Highways are public roads, and substituting the synonymous term 'public roads', the act provided that no roads should be public roads unless and until duly established as the act provided. We do not see how any language could be plainer.**

. . . .

What we have said is strengthened, if need of strengthening exists, by the provisions of Chapter 100 of the Legislative Acts of 1921, now § 48–301, W.C.S.1945. In that legislation, for the phrase at the beginning 'On and after January 1st, 1922,' the legislature substituted, 'On and after January 1st, 1924.' No other change in the legislation of 1919 was made. The purpose quite apparent. The legislature evidently found that the various boards of county commissioners had not been given sufficient time to cause all rural public roads to be shown on the records, and therefore extended the time in which that might be done for another two years. The intent to put a finishing touch to the policy inaugurated at least in 1886 is clear. **It shows how thoroughly the legislature was convinced that all rural public roads should be shown on the public records.**

*Nixon*, 264 P.2d at 293–94 (internal citations omitted; emphasis added). After analyzing a similar statute from Arizona, the opinion concluded:

It would seem clear that the meaning and effect of the Arizona statute that 'all roads in the territory of Arizona now in public use, which do not come within the foregoing provisions of this section, are hereby declared vacated' is substantially the same as the provisions of our statute that 'no other roads shall be highways unless and until lawfully established as such by official authority.'

264 P.2d at 295. It is clear that Justice Blume, the author of *Nixon*, considered that all roads not recognized by the respective boards of county commissioners per the requirements of the 1919 statute were effectively vacated.[5] This principle was not directly applied to claims under R.S. 2477, however, because that statute was not relevant to the road in question. It would be another 27 years before the issue was discussed again.

[¶ 29] The final case before the current one, in which the possibility of establishing public roads under R.S. 2477 and the Wyoming statutes was raised, was *McGuire v. McGuire*, 608 P.2d 1278 (Wyo.1980). In that case, the appellees filed a petition to establish a private road with the Platte County Board of Commissioners to establish a private road to provide access to their landlocked property. Since the main focus of *McGuire* was on the establishment of a private road, much of the discussion and the ultimate holding are not relevant to the case before us. However, the question of a public road was tangentially raised when the appellants claimed that the appellees "real objective is to cross the lands of the appellants . . . to join up with what is identified as the BLM road across lands of the United States, which road joins with a public road." 608 P.2d at 1287. The question presented to the *McGuire* court was whether or not connecting to the BLM road satisfied the requirements of Wyo. Stat. Ann. § 24–9–101 (Michie 1977 Rep. Ed.) and constituted a convenient public road with which the appellees could connect the private road they sought to establish. *Id.* The *McGuire* court concluded that the 1919 statute and the decision in *Nixon* were not relevant to the situation before it:

The statutory section we examine does not define public road.[6] ***Nixon v. Edwards, 1953, 72 Wyo. 274, 264 P.2d 287, cited by appellants, is not helpful because it involves no question of connecting to a federal road across public lands, such as we have here. State statutes pertaining to state and county roads and which do contain some definitions are not applicable to roads such as the BLM road, the latter being under the jurisdiction of the United States.*** We cannot adjudicate its status so as to in any fashion bind the United States. [Footnote] We are limited to generally describing it in the light of the statute we have *before* us.

608 P.2d at 1287 (emphasis added). In the footnote cited above, the opinion stated, "As pointed out in Finding No. 21 of the county commissioners, *supra*, 43 U.S.C. 932 [R.S. 2477] was repealed effective October 21, 1976. However, a public road had been established long before that. When land is granted for a public road, the public may accept the grant without action by public authorities. *Hatch Bros. Co. v. Black*, 1917, 25 Wyo. 109, 165 P. 518." *Id.*

[¶ 30] The precise issue before us here— the effect of the 1919 statute on the establishment of public roads under R.S. 2477— was not before the court in *McGuire*. As we noted in that case, Wyoming statutes pertaining to state and county roads were simply not applicable because the road in question was located entirely on federal land. Nevertheless, the Defendants point to the *McGuire* footnote cited earlier and argue that it supports the continual validity of our decision in *Hatch*. The footnote correctly cites the holding in *Hatch*. However, neither the footnote nor the body of the opinion addresses the impact of the 1919 statute or the *Nixon* decision. Since the road in ques-

5. The ultimate holding in *Nixon* was that the 1919 statute eliminated the common law cause of action for public prescriptive easements. 264 P.2d at 296. The legislature reinstated the cause of action in 1955. Session Laws, ch. 199, Sec. 1 (1955). The legislature has amended the law several times since then to expand the statute to include the elements and the legal procedures to be followed when seeking to establish a public road by prescription. *See* Session Laws, ch. 56, Sec. 1 (1967), and Session Laws, ch. 74, Sec. 1

(1973). The 1919 statute, incorporating the 1921 amendment and the subsequent additions relating to prescription, remains the law of Wyoming. Wyo. Stat. Ann. § 24–1–101(a) (LexisNexis 2003).

6. The statutory section referenced in this sentence is the one concerned with the establishment of private roads. Wyo. Stat. Ann. §§ 24–9–101 (Michie 1977 Rep. Ed.).

tion was not within the jurisdiction of the State of Wyoming, it is no surprise that the *McGuire* opinion did not do so. The footnote is merely a statement of the holding in the *Hatch* case without reference to current law and, as such, is dicta. Therefore, we find the Defendants' reliance on *McGuire* to be unpersuasive.

[¶ 31] We now turn to the issue presently before us. Since this case comes to the Court on appeal from summary judgment, we view the record from the perspective most favorable to the party who opposed the motion. The Defendants have alleged that the Trail was established as a public road prior to the homesteading of the land over which it runs. Pursuant to this Court's decision in *Hatch*, public use without any official action was sufficient to establish a road under the grant from Congress in R.S. 2477. For purposes of this opinion, we will assume that the Trail was established as a public road prior to the Forbeses' predecessor's entry onto the land. Accordingly, we must determine what effect, if any, the passage of the 1919 law defining and regulating the establishment of public roads had upon roads established pursuant to R.S. 2477.

[¶ 32] We hold that the 1919 statute effectively vacated the public status of any road, including those established pursuant to R.S. 2477, which were not recorded and established by the pertinent board of county commissioners. R.S. 2477 roads are regulated under the law of the state in which the road is located. *Richter,* ¶ 27; *Western Aggregates, Inc.,* 101 Cal.App. 4th at 296, 130 Cal.Rptr.2d 436; *Hodel,* 848 F.2d at 1083. The 1919 law was clear and unambiguous: "[T]he act provided that no roads should be public roads unless and until duly established as the act provided." *Nixon,* 264 P.2d at 293. In *Nixon,* this Court interpreted the 1919 statute to mean that no road could be a public road unless it was recorded and duly established as such under the terms of the statute. We equated that prohibition with an Arizona statute that specifically stated that roads not properly recorded pursuant to statute were considered vacated as public roads.

We see no reason to deviate from that interpretation today. The records of Sheridan County do not show that the Trail had ever been recorded and established as a public road as required by statute. Accordingly, we conclude that the Trail is not a public road.

*Prescriptive Easement*

[¶ 33] The Defendants claimed that they, individually, and that the public in general had acquired a prescriptive easement to use the Trail. To establish a prescriptive easement, one must show adverse use: (1) under color of title or claim of right; (2) such as to put the owner of the servient estate on notice that an adverse right was being claimed; and (3) that the adverse use was continuous and uninterrupted for ten years. *Lincoln County Board of Commissioners v. Cook,* 2002 WY 23, ¶ 39, 39 P.3d 1076, ¶ 39 (Wyo.2002). The Defendants contend that the district court erred in granting the Forbeses' motion for summary judgment upon their prescriptive easement claims. The district court held that the Defendants had failed to offer any evidence that they or the public had provided notice to the Forbeses of an adverse claim. The Defendants attack this ruling arguing that they had produced evidence showing continuous use of the Trail by the public since its inception in the early 1890's, and by the individual Defendants since the 1970's and 1980's. This use, they contend, was under the color of right and was adverse to the Forbeses' interest in the land over which the Trail ran. Furthermore, the Defendants argued that there were material facts in dispute as to when the Forbeses placed signs along the Trail ostensibly giving the public permission to use the Trail and what effect, if any, these signs had on the adverse nature of their, and the public's, use of the Trail.

[¶ 34] After a careful review of the record, we affirm the district court's summary judgment ruling. The Defendants did not provide evidence sufficient to overcome the presumption that their use was permissive.[7] "The party claiming an ease-

---

7. The Forbeses contend that the Defendants' public prescriptive easement claim should be dis-
missed because they failed to follow the specific procedural and substantive requirements set

ment has the burden of proof, and such a claim is not favored." *Lincoln County,* ¶ 39 (citing *Prazma v. Kaehne,* 768 P.2d 586, 589 (Wyo.1989)). As we have explained:

> Adverse or hostile use is use inconsistent with the owner's rights, without permission asked or given, such as would entitle the owner to a cause of action against the intruder. [*Koontz v. Town of Superior,* 746 P.2d 1264, 1268 (Wyo.1987)] (*quoting* 7 R. Powell and P. Rohan, *Powell on Real Property* § 1013[2] at 91–18 (1987)). The claimant must demonstrate how its actions would give notice to the landowner of the adverse use and adverse nature of his claim. *Prazma,* 768 P.2d at 589. Use "by permission or sufferance" cannot ripen into title, "no matter how long continued." *Board of County Com'rs of Sheridan County v. Patrick,* 18 Wyo. 130, 104 P. 531, 532–33 (1909); *see Koontz,* 746 P.2d at 1268. However, a property owner's failure to interrupt or object to the public use of his property for the statutorily prescribed period cannot be equated with permissive use. *Koontz,* 746 P.2d at 1268.
>
> Open, notorious, and continuous use is not sufficient, in and of itself, to justify granting a prescriptive easement; the use still must be adverse. *Weiss v. Pedersen,* 933 P.2d 495, 501 (Wyo.1997) (*quoting Shumway v. Tom Sanford, Inc.,* 637 P.2d 666, 670 (Wyo.1981)); [*A.B. Cattle Co. v. Forgey Ranches, Inc.,* 943 P.2d 1184, 1189 (Wyo.1997)].

*Lincoln County,* ¶¶ 40–41.

[¶ 35] The Defendants rely solely on the historical use of the Trail by themselves and the public to support the contention that the use was adverse. This is simply insufficient. The burden was on the Defendants to demonstrate how the public's and their individual actions gave notice to the Forbeses that the use was adverse. This could have been accomplished through deed or by words. Our precedent has made it clear that the use is presumed to be permissive. To overcome that presumption we have

found the claimant must provide evidence that the landowner was aware specifically that the claimant claimed exclusive right to the easement. "To rebut this presumption the claimant must introduce evidence of the facts which demonstrate the manner in which the hostile and adverse nature of his use was brought home to the owner of the adjacent land." *A.B. Cattle Company v. Forgey Ranches, Inc.,* 943 P.2d 1184 at 1188 (Wyo. 1997) (quoting *Weiss v. Pedersen,* 933 P.2d 495 at 501 (Wyo.1997)). The only evidence offered by Defendants with regard to putting the Forbeses on notice was the fact that the Forbeses were aware of the use by the public and could see the Trail from their ranch. Those facts do not show the public's and Defendants' adverse claim was "brought home" to the Forbeses as those uses were not exclusive of the Forbeses' use. Further, a presumption of adverse use does not "arise where the user is shown to be permissive in its inception, or where it is not shown to have continued for the prescriptive period; *nor, in the absence of some decisive act indicating separate and exclusive use, does it arise where the user is not inconsistent with the rights of the owner, as, for instance, where the user is in connection with that of the owner or the public or is claimed with respect to unoccupied, uninclosed,* [sic] *and unimproved lands, the use in such cases being presumed to be permissive and in subordination to the owner's title." Shumway v. Tom Sanford, Inc.,* 637 P.2d 666 at 669 (Wyo.1981) (quoting 28 C.J.S. Easements § 68 at 736–37 (1941)) (emphasis in original); *Lincoln County,* ¶ 47. The Defendants' failure to present any evidence demonstrating an adverse nature of their use or notice of the landowner's knowledge of the use itself, is fatal to their claim.

## CONCLUSION

[¶ 36] The district court's orders denying the motion to intervene and granting sum-

---

forth in Wyo. Stat. Ann. § 24–1–101(a) to establish a county road by prescription. The Defendants reply that the statute is not relevant because it was enacted after the acts establishing the public prescriptive easement over the Trail

were satisfied. Since we conclude that the Defendants failed to produce evidence to meet one of the elements of a claim for a prescriptive easement, we need not address this issue.

mary judgment in favor of the Forbeses are affirmed.